### CUSHMAN PAPER BOX MACH. CO. v. GODDARD et al.

(Circuit Court of Appeals, First Circuit. June 1, 1899.)

#### No. 278.

1. PATENTS—STATE OF THE ART—JUDICIAL NOTICE.
    For the purpose of ascertaining the state of the art, the court may take judicial notice of what is disclosed by its own records in a previous case involving machines appertaining to the same art.

2. SAME—INFRINGEMENT—ESTOPPEL—EXPIRED LICENSE.
    The fact that an alleged infringer at one time held a license, since expired, and marked his machines as marked under the patent sued on, is not an estoppel against him on the question of infringement, when the record does not show whether or not his conduct in obtaining such licenses and so marking his machines was because he misconstrued the patentee's rights under his claims, or was merely not disposed to make any contest for the time being.

3. SAME—PAPER-BOX MACHINES.
    The Cushman patent, No. 364,161, for an improvement in paper-box machines, is limited, in view of the prior state of the art, to the specific form of mechanism shown and described. Sewing-Mach. Co. v. Lancaster, 9 Sup. Ct. 299, 129 U. S. 263, and Hobbs v. Beach, 34 C. C. A. 248, 92 Fed. 146, distinguished.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Cushman Paper Box Machine Company against Harry W. Goddard and others for alleged infringement of claim 1 of letters patent No. 364,161, issued May 31, 1887, to George H. Cushman, for an improvement in paper-box machines. The circuit court found that the defendants were not guilty of in-

fringement, and accordingly dismissed the bill. 90 Fed. 727. From that decree the present appeal was taken.

William A. Macleod, for appellant.

Edward S. Beach, for appellees.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge. This is a bill brought against alleged infringers of a patent issued to George H. Cushman, May 31, 1887, for improvements in paper-box machines. One claim only is in issue, which is as follows:

"In a machine for the manufacture of paper boxes, a box-rest for the box-body, and a presser-plate co-operating therewith, pasters, and guides to hold the end blanks above said pasters, combined with a reciprocating feeder, substantially as described, whereby the pasted end blanks are automatically fed from the guides to a position between the presser-plate and box-rest, to be united to and form an end of the box-body, substantially as described."

We have no occasion to consider the validity of the patent or the propositions bearing thereon with reference to the questions of novelty, utility, and patentability of the invention, submitted by the appellant, who was the complainant below. The only question which we need regard is that of infringement, and this depends on the scope of the invention in the light of the state of the art. On this question we agree with the conclusions of the circuit court.

The invention, on its face, suggests that under consideration by this court in Hobbs v. Beach, 92 Fed. 146, where the opinion was passed down on February 13, 1899, and which invention also related to the manufacture of paper boxes. The invention in that case was, however, akin to that in Sewing-Mach. Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, in that a new function or result was accomplished automatically; the result being a contrivance for staying automatically the corners of paper boxes with short strips of paper or muslin, which staying had before been done by hand. In the case at bar, the box-rest, and the presser-plate co-operating therewith, and the resultant (that is, compressing blanks upon the box-body), were old. The circuit court determined that "what Cushman" (that is, the inventor) "did was to incorporate a reciprocating feeder into a special kind of box machine." This conforms to the specification, which says:

"My invention consists, essentially, in a combination, with a pasting mechanism, a box-rest, and a presser-plate, of an automatically operating feeder, whereby the pasted end blank is transferred from the pile of blanks into position to be forced closely in contact with the end of the box-body."

In other words, as found by the circuit court, everything in the patented device, including the resultant, namely, the securing the box-end to the box-body mechanically, was old, except uniting the parts by a feeding mechanism. It is a matter of general knowledge that, at the time when this patent was applied for, automatic feeding mechanisms were common in the arts; and the record shows they were not unknown in paper-box machines, although never used in a machine for pasting box-ends. That automatic feeders were old

in box machines we also know, as a part of the state of the art, from our own record in Beach v. Hobbs, already referred to. The application for that patent, as shown by the record, was filed on June 10, 1885; antedating the patent in suit about 10 months. It is true, as already said, that the Beach device was an automatic machine for staying the corners of paper boxes; but it contained mechanism for cutting, pasting, and feeding .the stays, the last step being to paste them to the corners of the boxes by pressure between clamp dies. For the purpose of ascertaining the state of the art, when it concerns a matter of general interest, as it does in the determination of the construction of this class of letters patent, we are certainly authorized to take notice of our own records, and perhaps we may always do so. Butler v. Eaton, 141 U. S. 240, 243, 11 Sup. Ct. 985; Smelting Co. v. Billings, 150 U. S. 31, 38, 14 Sup. Ct. 4; Craemer v. Washington, 168 U. S. 124, 129, 18 Sup. Ct. 1; and In re Boardman, 169 U. S. 39, 44, 18 Sup. Ct. 291. As the question of the construction of the patent in issue concerns, not only the parties in this case, but also the public, so that, as is well settled, we have a certain duty to take notice of matters bearing upon questions of the existence and extent of patentability, we would not be justified in ignoring what our own records show us in Beach v. Hobbs on this point, in view of the fact that they are of so late a date that they cannot be presumed to have escaped our attention. Therefore it follows, as already said, that feeding mechanisms were, at the date of the application for this patent, not only common in the arts, but they were also so well known in this special art that, in consequence, the mere use by this inventor of a feeding mechanism did not of itself constitute invention. The case, in that particular, falls within the rule applied by the well-known decision in Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. 220. In Heap v. Tremont & S. Mills, 27 C. C. A. 316, 82 Fed. 449, 455, and 456, we gave the general rules with reference to analogous uses, as then most lately stated by the supreme court; but there is nothing in those rules, even when most liberally applied, which, under the circumstances of this case, can entitle the inventor to a broad claim for a feeder. There have not been brought to our attention any facts tending to show that the art was particularly hindered by the lack of an automatic feeder in prior machines for doing the precise work in issue here, or that the trade had been looking to overcome any such hindrance, or that any great advantage resulted therefrom. In other words, there are lacking here the special facts necessary to give support to an invention, or to broaden it, which existed in Sewing-Mach. Co. v. Lancaster, ubi supra, or in Krementz v. S. Cottle Co., 148 U. S. 556, 560, 13 Sup. Ct. 719, or in Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, 761. Therefore we are forced to agree with the determination of the circuit court that the inventor was only entitled to a patent for his specific mechanism; and the only further question we need to consider is whether the respondents have used an equivalent for the complainant's specific feeding apparatus. We need not regard some other questions which have been to some extent discussed,—as, for example, whether or

not the respondents have the complainant's pasting mechanism,—because, if any one of the elements of the claim which we are considering drops out in the alleged infringing device, this is, of course, sufficient to dispose of the case.

On the remaining question (that is, whether or not the respondents have used the complainant's specific feeding device), the complainant has failed to call our attention to any proofs which maintain the burden which rests on it on this issue. Mr. Livermore, the complainant's expert, testified only in general terms, as follows:

"In specific construction, the individual element of defendants' machine varies somewhat from those shown and described in the patent; but these differences are, in my opinion, immaterial, so far as the combination recited in claim 1 of the patent is concerned. Defendants' machine embodies the elements recited in claim 1 of the patent, namely, a box-rest for a box-body, a pressure-plate co-operating therewith, pasters, guides to hold the end blanks above the pasters, and a reciprocating feeder by which the pasted end blanks are automatically fed from the guides to a position between the presser-plate and box-rest. The said elements are automatically operated by suitable connecting mechanism so as to co-act together to supply the end blanks properly pasted, one at a time, from a pile or stack in the end-blank guides, in proper position with relation to the body blank, and to then press the end blank against the body blank, the same as in the Cushman patent. For the foregoing reasons, I am of the opinion that defendants' machine embodies the combination shown and described in the Cushman patent, and referred to in claim 1 thereof."

At no place, however, so far as the proofs have been called to our attention, have the complainant's witnesses pointed out specifically the resemblances or differences between the complainant's feeder and the respondents', so as to aid the court to pass on the issue. Mr. Livermore's general expressions may mean more or less, according to the nature of the subject-matter to which they are intended by him to be applied. As to this, he testified as follows:

"The novelty of the Cushman machine did not reside in the specific construction of the devices for guiding and supporting the end blanks, as there was no prior machine whatsoever containing the combination referred to, with any means whatsoever of guiding and supporting the end blanks; and I therefore think that the devices employed in defendants' machine, in co-action with the elements of the combination before referred to, are a complete equivalent for the devices of complainant's machine for supporting and guiding the end blanks, the only difference being that in defendants' machine the end blanks are supported at the middle part thereof, while in the machine of the Cushman patent the end blanks are supported along the edges thereof."

As, therefore, his testimony on the question of equivalents was based upon an erroneous construction of the patent, as we have pointed out, it is of no assistance to us. We have not even the presumption which arises from the fact that alleged infringers have intended to obtain the advantages of a patented device, while avoiding infringement, if possible. In the case at bar the respondents have never used the complainant's feeder in the form described by the patent, although they had a license to do so; but preferably, at the outset, and while holding the complainant's license, they used a feeder constructed according to their own form, which is the same shown by the alleged infringing machines. We think, however, that the case offers a very satisfactory solution. In the com-

plainant's device, the first adjunct is an upright holder of rectangular form, which operates as a hopper to drop down blank ends to the feeder as called for by it. In this respect the devices are substantially alike. We are unable to determine from anything found in the record whether or not, in this particular arrangement, there is novelty or ingenuity; but, even if there is, there are distinctions between the two devices as entireties which would not allow the case to turn on this proposition. The feeder proper, like ordinary reciprocating feeders, reciprocates on parallel horizontal rails, partly carrying, and partly pushing before itself, the end blanks; having also, at its forward end, a depression crossing it longitudinally, into which the second blank may drop when the feeder draws back from leaving the first blank under the presser-plate. Under this device the complainant shows a paster, which we need not consider in detail, for the reasons already stated. So far as the construction of the parts of the feeding mechanism already described is concerned, there is nothing in the record to show that there is anything unusual. At this point, however, it is evident that the inventor met with a difficulty, which was overcome with a considerable degree of ingenuity. When the blank, running in the ordinary way on parallel rails, reaches its position between the presser-plate and the box-rest, the parallel rails, in their normal condition, would prevent union between the box-end and the box-body. To meet this, the inventor broke the parallel rails transversely into two sections. The forward section extends under the presser-plate, and the other section under the hopper. But the two sections are so located that, so far as the forward movement of a box-end blank is concerned, they are in horizontal alignment. The section under the hopper remains as ordinary parallel rails, but that under the presser-plate is constructed, so far as we need consider it, of grooved guide rails, pressed inward by springs. The grooves are horizontal in the line of the movement of the feeder, and so adjusted that the blank ends are received in the grooves as pushed forward by the feeder. As the grooved guide rails are pressed inward by springs, they open as they are crowded down on the box-body, leaving the box-ends free to remain on the ends of the box-body after they are pressed into position by the presser-plate. In the respondents' device, neither the section of the parallel rails under the presser-plate, nor any equivalent thereof, is used. On the other hand, the end blanks, when moved forward to a position under the presser-plate, are kept in place by so-called fingers, thrust under them, which hold them in registration by pressing them firmly against the presser-plate; so that, when a box-end and the box-body are pressed together, the fingers are not in the way of a contact between them, and can be drawn back by the reciprocating movement when the proper time therefor arrives. It will thus be seen that the methods of the two devices of supporting the box-ends when they reach a position under the presser-plate, and of permitting their being dropped down upon the presser-plate, are essentially unlike. In the complainant's device, as shown in its drawings, the presser-plate is moved down against the box-rest, while in the respondents' the box-rest is the

part moved. This distinction, however, is evidently not one of substance, as either device is capable of being adjusted to operate in either method. The essential difference is that the complainant commences with the old means used in reciprocating devices, of continuous parallel rails, and overcomes the difficulties arising therefrom in the ingenious manner which we have pointed out. In the respondents' method, the parallel rails disappear before they reach the presser-plate, and the complainant's ingenious grooved guides and accompanying springs are not required. It is apparent from the proofs that the respondents honestly regarded their method of construction in these particulars as preferable to that of the complainant. Whether or not they were correct in this, it would seem, to use the language of the opinion in Westinghouse v. Brake Co., 170 U. S. 537, 573, 18 Sup. Ct. 707, that the complainant's method for overcoming the difficulties in delivering the box-ends to the box-body after they are in position one over the other would not naturally have suggested the device adopted by the respondents. We conclude that, on the proofs in this record, we cannot find that the respondents have infringed.

The complainant urges on us the fact that the respondents for some time held licenses from the complainant, and marked their machines as made under its patent, and it maintains that this operates against them as an estoppel; but the licenses have expired, and in no respect can the conduct of the respondents in these particulars have the legal effect which the complainant claims for it. On questions of utility and invention, facts of this class are sometimes persuasive as matters of evidence; but, as the respondents never did use complainant's specific form of feeder, to give these facts any substantial effect in supplementing complainant's case would be merely reasoning in a circle. This is evident, because the record does not solve the question whether or not their conduct in obtaining licenses and marking with the patent was because they misconstrued the complainant's right under claim 1, or were not disposed to make any contest for the time being. To give effect to the complainant's proposition in this particular would be to assume that this question is solved. The decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellees.