HOBBS MFG. CO. v. GOODING et al.

(Circuit Court of Appeals, First Circuit. October 17, 1901.)

No. 366.

1. PATENTS—INFRINGEMENT.

Where a feature of a patented machine is not referred to in the specification or claims of the patent, but is an essential element of the machine, so that the patent can only be sustained on the ground that it is one which would be supplied by any person ordinarily skilled in the art, it is immaterial on the issue of infringement.

2. SAME—ANTICIPATION.

With reference to patents for improvements in machines for pasting paper boxes, the question of anticipation depends in part on the nature of the paper box to be finished, and the method of finishing it.

3. SAME—PAPER-BOX MACHINES.

The Damren patent, No. 423,415, for a machine for making paper boxes,—its special feature being the mechanism for attaching the ends to the body of the box, which has been previously formed,—was not anticipated, and is valid. Claim 1 *held* infringed, and claims 3 and 5 not infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Edward S. Beach, for appellant.

William A. Macleod, for appellees.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. The application for the patent in suit was filed on September 21, 1888, by Damren, who was the inventor, and to whom the patent issued. The specification states that the invention relates to machines for making paper or pasteboard boxes, and more particularly to the operation of securing the two ends to the body of the box, the body having been previously formed. It is with reference to this particular only that we have to consider the case.

The circuit court dismissed the bill. While there are five claims, there are only three in issue, namely, 1, 3, and 5, as follows:

"(1) In a machine for making paper boxes, the combination of a form for receiving the box bodies, and a reciprocating carrier for conveying the box ends thereto, said form having a rearward recess or opening to admit the end of said carrier, substantially as shown."

"(3) In a machine for making paper boxes, the combination of a reciprocating carrier for conveying the box ends, having an extensible end, and a form for receiving the box bodies, having a rearward recess or opening to admit the extensible end of said carrier, substantially as shown."

"(5) In a machine for making paper boxes, the combination of a receptacle for the box ends, a form for receiving the box bodies, and a reciprocating carrier for conveying the box ends to said form, and provided with an extensible end, substantially as shown."

At the front of the machine are the box form and presser plate, constituting the co-operating press members for affixing the box end to the box body. Back of the presser plate is located the hopper. This is open at the bottom, and the lowermost box end rests upon the

upper surface of the carrier. A row of short spurs projects above the surface of the carrier, and in the forward movement thereof the spurs strike against the rear edge of the lowermost box end and push it out from under the hopper, and forward into a position beneath the presser plate, and in registration with the box body. The box form meanwhile rises, and, when it reaches its highest point, holding on it the body and the box end, it compresses these parts together against the presser plate. The reverse movement of the carrier withdraws it from the box form. When the carrier is at the forward extreme of its travel, it is interposed between the box form and presser plate, and if no provision otherwise existed it would be nipped between them. Accordingly the box form is provided with a rearward recess, which the carrier enters in its forward movement.

There are many references to a proposition that the carrier not only carries forward the box end, but also thereafter "stands and holds" it during the operation of pressing. There is, however, nothing in the specification which relates to a proposition of this character, and no specific mechanism is shown with regard thereto. The parties on both sides, however, refer to this as an element in the device. If for the carrier to stand and hold during the pressing operation is an essential part of the device, either the three claims in question are invalid because they do not point out the means of accomplishing this, or it is to be assumed that this is an element which will be supplied by any person ordinarily skilled in the art. Neither party, however, maintains that there is any invalidity in the claims on this account, so that we have no occasion to consider them from that point of view. The complainant, however, maintains that this standing and holding is a peculiar feature of his device which the respondents have adopted, so that, applying the rule of equivalents, they infringe on this account; but in view of the fact that nothing relating thereto is developed in the patent, so that, therefore, as we have said, it must be held, in order to save the claims, that this would be supplied by any person reasonably skilled in the art, it cannot be regarded as a special feature of such a character as to enlarge the scope of the device with regard to infringement.

The respondents claim that a great variety of box machines is within the prior art to which this patent appertains. In Machine Co. v. Goddard (decided by this court on June 1, 1899) 37 C. C. A. 221, 95 Fed. 664, we showed generally what was old in the class of box machines involved in this case, namely, box rests and presser plates co-operating together for compressing blanks upon the box body, receptacles for holding the box ends, automatic pasting mechanism, and everything in the machine shown by the patent to George H. Cushman to which that suit related, except an automatic feeding mechanism. The latter we said was common in the arts, and was not unknown in paper-box machines, though never used in a machine for pasting box ends. Cushman introduced an automatic feeding mechanism for this precise purpose, and he was prior to the patent in suit.

It does not follow that, so far as concerns the precise purpose to which the claims in issue here relate, the various prior devices re-

ferred to by the respondents are properly in the same art merely because they are in the box-machine art. In Machine Co. v. Goddard we pointed out that a prior patent issued to Beach was not for that case in the same art as Cushman's device, because it concerned staying the corners of paper boxes by pasting strips over their edges. The general art relates to mechanism for affixing the ends of paper boxes to their bodies, and the mechanism required for this purpose varies intrinsically according to the nature of the box to be finished and the method of finishing it. For the case at bar, the only patent which relates to the precise subdivision of the art now involved is that to Cushman.

Coming now to claims 3 and 5, they are, for our purpose, practically the same; and each includes the extensible ends, which clearly have the function of preventing two or more box ends from starting forward simultaneously. The testimony of the patentee assigns an additional function. He says that, when the machine was constructed without these extensible ends, the carrier came back so rapidly that it was liable to break the machine. Aside from these two functions, the carrier with the extensible ends serves in the patented machine exactly the same purpose as the carrier without the extensible ends. It enters the box form in such way as not to interpose between it and the presser plate, leaving the pasted edges of the box ends to overlap the end of the carrier at all points, so that they can be pressed upon the box form without the carrier being nipped in the operation.

The case shows several machines used by the respondents, of which some are described in the record as the "Glazier Machine" and the "Glazier and Metcalf Machine," and others as the "National Machines." It is only with the latter that we have to do, so far as the third and the fifth claims are concerned, because it is admitted that neither of the others has the extensible ends, or anything which corresponds to them. The National machines, so far as their apparent construction is concerned, do not have extensible ends; but the complainant claims they have what are the equivalents thereof, and what perform the same functions.

Damren admits that the National machines do not require the extensible ends for the purpose of properly selecting the end blanks from the receptacle, and that what they use in lieu of the extensible ends has nothing to do with the feeding mechanism. Their device grips the box ends after they are in place in the box form, and is called "gripping fingers." Their operation is thus explained: The reciprocating carrier delivers the box end inside of the box form to the grippers, which seize the box end and hold it, and press it against the presser plate until the box form comes up and presses the box body against its pasted edges. After carrying the box end into the box form, the reciprocating carrier has no further use in the National machines. It is so plain that the gripping fingers are not the equivalent of the extensible ends that this point requires no further discussion. It is therefore clear that claims 3 and 5 are not infringed.

With reference to claim 1, the construction of the box forms in the National machines is the same as in the complainant's device;

and, although perhaps not functionally necessary, the National machines have all the elements of this claim, namely, the reciprocating carrier, and a box form with a rearward recess to admit the carrier. So far as the case shows, though this construction may not be functional, any other may be inconvenient and expensive. However this may be, the respondents in fact have all the elements of the combination covered by claim 1, and this in a machine devised and used to accomplish the same general result as the complainant's. Infringement, therefore, necessarily follows, if that claim covers a patentable invention.

As we have already stated, the only prior device was the Cushman machine. Cushman was the first person to struggle with the precise subject-matter of claim 1 with regard to the particular class of box machines in issue; that is to say, with a reciprocating carrier which would automatically take the box end from the hopper and deliver it upon the box form under such circumstances that the box form might hold it while the pasted edges were pressed by the presser plate upon the box body. Instead, however, of using a box form with an open rearward end, Cushman used a box form whose upper end had a plane surface. Therefore any ordinary reciprocating carrier was in danger of being nipped. Consequently we said in the opinion in Machine Co. v. Goddard, 37 C. C. A. 221, 95 Fed. 664, "At this point, however, it is evident that the inventor met his difficulty, which was overcome with a considerable degree of ingenuity." Then we described the method by which Cushman did this. His carrier consisted of parallel rails, which in a normal condition would prevent a union between the box end and the box body. Cushman broke the parallel rails transversely into two sections, the forward section extending under the presser plate, and the other section under the hopper. The two sections were so located that, so far as the forward movement of the box ends was concerned, they were in horizontal alignment. The section under the hopper remained as ordinary parallel rails, but that under the presser plate was constructed with grooved guide rails, pressed inward by springs. The grooves were so adjusted that the box ends were received in them as pushed forward by the feeder; and as, in their normal position, the springs were pressed inward, the guide rails opened as they were crowded down on the box body, leaving the box ends on the ends of the box body while they were being pressed into position by the presser plate. All this, as is easily seen, was a complicated and delicately adjusted contrivance. The advance over Cushman by the substitution of a box form with a rearward opening so simplified the construction as for that reason alone to be of very considerable utility, and to raise a very strong presumption in favor of patentability. In addition to this, there is much ground for claiming that the Cushman device in this particular was never practically useful. It was found difficult to entirely clear the box end if constructed of the full width of the box body. Therefore in the Cushman device the box body slightly overlapped the box end at the edges where they were pasted together. This perhaps did not affect the utility of the box, but it undoubtedly diminished its commercial value.

Although the commercial success of the complainant's machine does not bear positively on the question of patentability, because it came from the machine as a whole, and not from the particular parts covered by the claims in suit, yet that Damren invented the first practically successful machine of this class is clearly established. The respondents claim otherwise, but the complainant's evidence on this score clearly preponderates. That this grew in part out of the combination in claim 1 can hardly be doubted, especially in view of the contrast with Cushman's machine.

Under these circumstances, it is clear that the combination in claim 1 was useful, and not anticipated. Can it be held to be patentable? Doubt on this point arises from the fact that it is so common in the arts to have receptacles constructed with open ends, like the box form in this case, adapted to receive articles through the open ends, that to use this for any particular purpose would seem, prima facie, not to be patentable. Nevertheless in this case it aided to make a successful machine; and the fact that Cushman failed to accomplish that result, notwithstanding his ingenuity, weighs strongly in favor of the patentability of the complainant's box form, simple as it is. On the whole, the presumption in favor of the patentability of claim 1 arising from the issue of the patent, in the light of the rules for determining invention stated by this court in Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, 759, 760, cannot be overcome.

The respondents refer to the file wrapper, but there is nothing in it which can affect claim 1, when limited, as we limit it, to its plain mechanical meaning.

A question is made as to who was the inventor. The respondents claim it was one Jones, and not Damren. The rule laid down by this court in Brooks v. Sacks, 26 C. C. A. 456, 81 Fed. 403, 405–407, disposes of this matter in favor of the complainant.

The circuit court held that the bill could not be maintained for several infringements by portions of the respondents because they are described as a copartnership. Nevertheless it sets out that they infringed "jointly and severally," so that the reference to them as copartners is merely descriptio personarum, which cannot override a positive allegation. In view of that fact, the opinion of this court in Simonds Rolling Mach. Co. v. Hathorn Mfg. Co., 36 C. C. A. 24, 93 Fed. 958, 963, applies, and the bill is not multifarious.

We conclude that claims 3 and 5 are not infringed, and that claim 1 is valid, and is infringed by all the respondents' machines, including the Glazier, the Metcalf, and the National.

The decree of the circuit court is reversed, and the case is remitted to that court, with directions to proceed in accordance with our opinion passed down this day; and the appellant recovers its costs of appeal.