FOLGER et al. v. DOW PORTABLE ELECTRIC CO.

(Circuit Court of Appeals, First Circuit. November 15, 1904.)

No. 538.

1. PATENTS—INVENTION—INSULATION FOR SPARKING PLUGS.
    The Folger, Moriarty, and Jacobson patent, No. 696,670, for a sparking block for use in gas engines, the essential feature of which is the providing of a double axial and radial insulation, is void for lack of patentable invention in view of the prior art.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 128 Fed. 45.

Nathan Heard, for appellants.

Edward P. Payson, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a bill in equity for relief against an alleged infringement of the several claims of letters patent No. 696,670, issued on April 1, 1902, to Henry Coleman Folger and others, entitled "Sparking Block." The decree of the Circuit Court dismissed the bill, and the complainants appealed to us. The first claim sufficiently indicates for present purposes the nature of all of them. It is as follows:

"1. In a device of the kind described, containing two spark electrodes and conductors leading thereto approximately parallel, an insulation between said conductors consisting of two contiguous parts composed of refractory insulating material, one part being mounted in close contact around one of said conductors, and the other surrounding the former, one of said parts extending integrally lengthwise of the device, and the other of said parts being made up of a series of layers extending radially of said lengthwise part, and means holding said insulation under longitudinal compression."

The nature and purpose of the invention are stated in the specification as follows:

"Accordingly our invention resides in providing insulation between the adjacent portions of the spark-plug circuit which will not break down or punc-

ture, no matter how high the voltage and frequency of the current and rapid the discharge thereof, and which will also stand the severe heat to which the plug is necessarily subjected in use. Stated broadly, our invention comprises, in connection with suitable circuit-terminals and conductors leading thereto, an insulation between the two parallel or adjacent portions of the circuit made up of a tubular portion of refractory insulating material—i. e., by 'tubular' we mean that the longitudinal layer is integral and imperforate from end to end, or is not made up of disks or radial sections—closely surrounding and extending longitudinally of the central conductor or core of the plug and another layer of refractory insulating material compressed around said horizontal tubular portion, and being made up of successive layers extending vertically to said horizontal insulation; or, in other words, the gist of our invention lies in the provision of two insulations compressed together as nearly solidly as possible, one insulation extending in a horizontal plane and the other insulation extending in a vertical plane—that is to say, the two insulations extend in opposite directions, and each is made up of suitable refractory insulating material capable of withstanding without fusion or reduction to another state the great heat to which the plug is subject—and one of said layers is integral in the direction of the length of the plug, and the other is integral in the transverse direction or radially of the plug.

"We have demonstrated by experiment and long practical tests in actual use that, even with heavy currents of the highest frequency capable of being generated by modern apparatus, there is no danger of this insulation, when constructed as will be explained more fully presently, being punctured or permitting a short circuit, or even permitting apparently any mutual influence between the two approximately parallel conductors of the spark-making circuit; but short-circuiting is prevented effectually and completely by one or the other of the two insulations whose layers of refractory material extend in opposite planes."

It is thus made plain that what was sought was, briefly, a method of insulation which would not only resist great heat, but also would be very refractory with reference to short-circuiting. In view of what is thus disclosed by the record, supported by the propositions submitted to us at bar, it is clear that the novel peculiarity of the complainants' patent is what was described at the bar as a "double axial and radial insulation." Bell, the expert called by the respondent, summarized as follows:

"In fact, insulating sleeves and washers were so familiar in the art that anyone skilled in the art of insulation would have been likely to use the two in all sorts of combinations, arranging sleeves and washers as best suited the particular problem in insulation which he had in mind."

In addition thereto, Bell testified as follows:

"All the claims of the patent in suit contain as part of the combination the combined radial and axial insulation." "And in view of the familiarity of both these elements and their previous use by various constructors of insulation for various purposes, I do not see how any novelty can reside in their combination at so late a date."

This testimony involves the practical condition of the art, and is not met by any proofs controverting it. Moreover, it entirely harmonizes with that common knowledge in which the court is entitled to share when it becomes, as on a hearing in equity on bill, answer, and proofs, a trier of the facts as well as of the law. While this general principle is not controverted, it was attempted to be met by Prof. Main, a well-known expert called by the complainant, as follows:

"Dr. Bell, however, takes the position that, in spite of failure to find the combination of the patent in suit anywhere in the prior art, the feature of

novelty was nevertheless lacking because the elements of the combination were familiar to electrical constructors. The weakness of this position appears to me to be self-evident. If correct in general, no new machine could be invented, inasmuch as screws, cams, levers, and other component elements of every machine are familiar to all mechanics. But when we pass over into electrical combinations and the peculiar conditions involved in gas engines, the results of new combinations are certainly even less obvious than in ordinary mechanical devices."

As we have said, this does not controvert Bell's testimony, but seeks to avoid it on the ground that the special method of insulation described by the patentees was for the first time used in gas engines, thus creating a novel combination. Of course, a proposition of this character establishes invention under certain special circumstances which have been so often pointed out by the decisions of the courts, especially of the Supreme Court, that they are entirely familiar. We may refer to a few peculiar applications of this exceptional rule which we cited in Watson v. Stevens, 51 Fed. 757, 2 C. C. A. 500, and in Westinghouse Electric & Manufacturing Company v. Stanley Instrument Company, in an opinion passed down on September 9, 1904. 133 Fed. 167. But neither the fact stated by Prof. Main nor any other fact in the record establishes such special circumstances. No question relative to the specific materials employed, or to the new results accomplished, arises in the patent in suit on the case as presented on this appeal, but patentability is founded solely on the employment of axial and radial insulation in a "sparking block" in gas engines. Upon this state of facts, and for the reasons already given, we do not perceive that the patent can be held to cover a patentable invention. Therefore the decree of the Circuit Court must be affirmed.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.