DUNN MFG. CO. et al. v. STANDARD COMPUTING SCALE CO.

(Circuit Court of Appeals, Sixth Circuit. May 25, 1908.)

No. 1,761.

PATENTS—INVENTION—COMPUTING CHEESE CUTTER.

The Dunn patent, No. 800,431, for a computing cheese cutter, consisting of a new combination of old elements, which eliminates certain parts of prior machines and simplifies the mechanism, so as to produce a better and more practicable and salable machine, discloses invention; also held infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is a bill to enjoin infringement of patent No. 800,431, issued to H. F. Dunn and assigned to appellants, who were complainants below. The Circuit Court held the patent void for want of patentable novelty, ad dismissed the bill. The patent is for an improved computing cheese cutter. The patentee in his specifications says that his invention "consists in first ascertaining the value of the cheese or the sum desired to be realized from the sale of an article in portions, and providing the apparatus with a single row of characters indicating the total possible values of a cheese or such other article desired to be sold in pieces. A designator is then set to the character in such row of indications representing such ascertained value of the cheese or sum to be realized from its sale, whereupon the movement of said cheese carrier is so limited that such movement will measure off a definite money's worth of said cheese or other article, which measured portion may then be served. Thus it will be seen that my invention dispenses with the necessity for dealing with such incidental matters as weights and prices per pound and presents only the simple and ultimate result, to wit: A cheese or other article is to be sold for so much money, and the apparatus is set to cut said cheese or article into portions that will realize said sum of money." Figure 1 of the patent, set out below, is a perspective view of a cheese cutter, and sufficiently shows the inventions for the purposes of this opinion.

In that drawing 10 shows the cheese carrier, provided with teeth upon its periphery and adapted to be engaged by the pawls, 12, upon the arm, 13, fulcrumed concentric with the carrier. "The carrier and arm, 13, are revolubly supported by a base, 14, provided with uprights, 15, between which extends a knife-carrying frame, 16, having knife, 17, secured thereto and adapted to sever portions of the cheese or other article upon the carrier, 10. Upon said base, 14, are one or more retaining pawls, 18, engaging with said teeth, 11, for retaining the carrier, 10, in such positions as it may be moved to by the pawl or pawls, 12, upon arm, 13. Secured to base, 14, is a longitudinal bearing plate or bar, 20, provided with a single row of indications representing the total prices or the total money value desired to be realized from the sale of a cheese or other article to be sold in portions. Upon said plate, 20, is a stop block or member, 21, provided with a set screw, 22, adapted to secure said block or member, 21, at any position upon said bar, 20; said block or member, 21, being set to the character upon said bar, 20, representing the value of the cheese or the money to be realized from its sale, whereby each movement of lever, 13, throughout the space limited upon one side by the contact of lever, 13, with said block or member, 21, and upon the other side by a projection or

fixed stop, 23, of plate, 20, will drive the carrier, 10, to measure a predetermined money's worth of said cheese, which may be either 5, 10, 15, 20, 25 cents, or any other sum of money previously determined upon and provided for by the spacing of the graduations upon bar, 20. The total-value graduations on this scale-bar consist of marks which are designated by figures indicating such total values arranged inversely as to their respective distances from the fixed stop, so that the highest figure will be nearest the fixed stop, and such distances not only correspond to aliquot parts, respectively, of such total values, but also to aliquot parts or sector portions of the carrier."

The claims in issue are 2, 7, and 10, which read as follows:

"2. The combination of a cutting mechanism, a carrier for the article to be cut in portions, means for moving said carrier, a scale-bar having a fixed stop and inverse total-value graduations indicating sums of money to be realized from the sale of such articles and governing the size of said portions in accordance with the total value, and means in adjustable engagement with said scale-bar for limiting the motion of the means for moving said carrier, substantially as specified."

"7. In a cheese-cutter, the combination of a base-frame, a scale-bar carried by said frame, and inversely graduated in total values of different cheeses, a rotary table on said base-frame, a table-rotating lever having movement over said scale, and an adjustable stop engaging said scale-bar for limiting the movement of said lever, substantially as specified."

"10. In a cheese-cutter, the combination with a base-frame, a rotary carrier thereon for cheeses of different values, a reciprocating operating lever for said carrier, a scale-bar on said base-frame, a fixed stop on said scale-bar, total-value graduations inversely arranged at distances directly increasing from said fixed stop, and an adjustable stop engaging said scale-bar to limit the movement of said operating lever, whereby pieces of constant value will be cut from cheeses of different values substantially as specified."

V. H. Lockwood, for appellants.

C. H. Fisk, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge (after stating the facts as above). It is not of consequence that the elements of each claim may be old, for the claims are for a combination, and if the combination be new, or if by a new mode of organization new or better results are obtained, the patent may be sustained. The first step, as shown by the history of the art, was a cutter organized with a scale which was capable of measuring equal proportional divisions of the pieces to be cut off; but if the cheese differed in weight or value another slip must be taken. This was taken by both McCroskey and F. P. Dunn, to say nothing of the devices which preceded them. The two patents in evidence issued to McCroskey and the later patent to F. P. Dunn, also in evidence, show mechanisms which by adjustment were adapted to cut proportional and equal divisions without regard to the weight of the cheese or the total value to be realized. For this reason, while involving some change in organization, they were held by the learned trial judge to anticipate. The validity of the patent in suit must turn upon whether such structural changes have been made in appellant's organization of old elements as to produce a simple and more practical operating machine than those shown by the old art.

We may start with the significant fact that not one of the alleged anticipating devices proved a success as a practical and salable cheese cutter. Such devices are sold to retail grocers. The well-known conditions which a successful computing cheese cutter had to meet re-

quired not only one which should be economical in construction, but above all else it must be simple in operation. This want of simplicity of operation was the trouble with those cutters from the old art which most nearly anticipate the patent in suit. They were undoubtedly clumsy and difficult of easy operation. Then they failed, and the device of the complainants is shown to have in large degree supplanted them. This fact does not always prove invention, for the methods of exploiting may sell an inferior machine over a superior one not pushed. But if there be doubt about the matter of utility, doubt about the merit of a new organization, the scale may be turned by evidence of public approval. We need not consider any of the numerous patents issued for cheese cutters, for it is plain that the patents to McCroskey and that to F. P. Dunn exhibit the last advances. If they do not so completely anticipate as to leave no room for H. F. Dunn, the patentee whose invention is in suit, his patent is sustainable. Indeed, we go further. The F. P. Dunn patent, whether conceded or not, is the closest approximation, and we shall for the most part confine ourselves to a contrast of that device with the patent in suit. As the case must turn upon certain parts only of the computing cutters put in contrast, we here show a figure taken from the brief of Mr. Lockwood, attorney for the appellants, showing the location of the graduated scales of the F. P. Dunn patent:

This diagram illustrates the resemblances as well as the chief differences, omitting the actuating mechanism, for the claims in suit do not involve that feature. The scale-bar, F, showing graduations beginning at 12 and running up to 36, represents the different weights

of cheeses. If the cheese was known to weigh 20 pounds and the sale price was 20 cents per pound, the adjustable stop, f, would be moved so as to stop at 20 on the scale-bar. Then by a movement of the lever, E, from the fixed stop, f′, until it is stopped by the previously adjusted movable stop, the knife, not shown in the figure, would, when operated, cut a division of cheese which would represent one-fourth of a pound, or one-eightieth of the entire circumference of the cheese. Being a 20 cents per pound cheese, that proportional part thus served would have a value of 5 cents. To this extent the F. P. Dunn device was capable of cutting slices of a known value of 5 cents, or a limited number of multiples of 5, and was, therefore, in some sense a value-cutting cutter, as well as a weight cutter. But if the cheese weighed more or less than 20 pounds, or was to be sold for more or less than 20 cents per pound, the graduated total weight scale shown in the figure above at F had to be supplemented by the proper adjustment of two other graduated scale-bars, shown in the figure at G and G′. These scale-bars, according to the patent, are located beneath the rotary cheese board or carrier, which rests on the base, A. To set it when any cheese is to be sold for more or less than 20 cents per pound, this cheese carrier must be removed. Then the slicing scale-bar, G′, must be moved upon the scale-bar, G, until the figure representing the price per pound registers with the figure representing the total weight of the cheese. The patentee then says that when these weight and price figures register "a red line, g, to the right of the numbered graduations upon slide, G′, will then indicate upon the scale-bar, G, where the adjustable stop must be set to cut 5 cents worth of cheese." When the adjustable stop is placed as indicated by the figures pointed to by g, the cutter is ready for operation. The necessity for the setting or adjustment of these distinct graduated scales, two of which can be only reached by taking off the rotary carrier board, while plain enough to one familiar with the art, and perhaps soon acquired by the quick-minded and expert with mechanics, is manifestly a slow and complicated operation to be followed by the average grocery clerk. It was not easily understood or easily explained. An effort to operate the cutter confirms the evidence showing the difficulty in inducing purchases due to a want of simplicity of operation.

The device in suit contrasts most favorably in the matter of simplicity of operation with the best type of the old art, the F. P. Dunn cutter. Referring to the figure and the description of the patent involved, heretofore set out, it will be seen that, instead of three graduated scale-bars by which to set the cutter for cheeses when of greater or less value than 20 cents per pound, there is but one graduated scale-bar, and that one adjustment, and that exceedingly simple, is necessary for a cheese of any weight or price. That scale is a total-value scale. The figures show the various values from $2 up to $8. The weight being known and the price per pound, the one is multiplied by the other for the total value, and the movable stop, 21, is moved to stop at the figure showing total value of the cheese. This sets the scale so that, when the lever arm is moved from the fixed stop into contact with the movable stop, the cheese knife cuts equal divisions of the value of 5 cents, or any multiple up to 25. That is the whole

operation. The feature of the patent in suit is the single scale, which the patentee calls his "total-value system." That, he says, consists in "a scale-bar with a fixed stop and a movable slide or stop, and an operating lever moving adjacent to this scale-bar, and a series of graduations representing total values of cheeses; these graduations being arranged to run inversely with reference to the fixed stop."

To say that he has substituted only a total-value scale-bar for the weight scale of the F. P. Dunn device is not altogether true, for he has also substituted his simple total-value scale for their scale-bars and their graduated scales, two of them inconveniently located, which single scale does all that the three could do. The evidence shows that by reason of the simplicity in the operation of the device of the patent it supplied a demand of the trade and has met with larger sales. The patentee did not take the first nor the second step. He did not first invent a cheese cutter which was an adjustable value cutter. What he did was to so simplify the operation of such cutters as to adapt them to the trade, and met a demand which many others had tried to supply. Neither McCroskey nor F. P. Dunn made a success. The appellants first made and sold the F. P. Dunn device. When they made and put the device of the patent upon the market, it superseded the other. The appellees have joined in paying tribute to the practical merit of the later invention, for they have copied it so closely as to compel the concession in argument that, if the patent of the appellants is valid, they infringe.

The change to a single total-value scale-bar also involved structural changes by which a single graduated scale-bar adjusts the cutter, which required two or more in the McCroskey and F. P. Dunn inventions. Former experimenters may have had some dim notion of the interchangeability of the total-weight scale with a total-value scale, but none of them had carried any such concept into a single practical total-value scale. The elimination of unnecessary scale-bars differently graduated and inconveniently placed, by substituting a single scale-bar conveniently placed and so graduated as to do the work of two in the McCroskey and of three in the F. P. Dunn patent, involved such mechanical or structural changes as to constitute invention. Davis v. Perry, 120 Fed. 941, 57 C. C. A. 231; Brown v. Piano Company, 134 Fed. 735, 67 C. C. A. 639; Hobbs Manufacturing Company v. Gooding et al., 111 Fed. 403, 406, 49 C. C. A. 414; Dececo Company v. George E. Gilchrist Company, 125 Fed. 293, 298, 299, 60 C. C. A. 207. In Western Electric Company v. North Electric Company, 135 Fed. 80, 89, 67 C. C. A. 553, 563, we said, speaking by Judge Severens, that:

"While the mere assembling in a new organization of parts of old systems to perform the same functions in their new places (as in Goodyear Tire Company v. Rubber Tire Wheel Company, 116 Fed. 363, 53 C. C. A. 583) is not invention, yet where they are so taken, and are organized in a new and useful manner so as to produce a more beneficial result, there may be invention; and where the combination displays the exercise of inventive skill and genius beyond that possessed and exercised by those skilled in the art, and the discovery is of something new and useful, invention should be recognized."

Again, in Sanders v. Hancock, 128 Fed. 424, 433, 434, 63 C. C. A. 166, 176, the same judge, speaking for this court, said:

"We have in several instances held valid combinations of old elements when from their different location in the new organization a different mechanical result was effected and a beneficial use subserved. Thus, in Star Brass Works v. General Electric Company, 111 Fed. 398, 49 C. C. A. 409, the new location given to the brush which takes off the current from a trolley wheel on street railway cars, which effected a more advantageous transmission of the current and afforded better protection to the brush, was patentable."

In Stilwell Company v. Eufaula Cotton Oil Company, 117 Fed. 410, 54 C. C. A. 584, where the opinion was by Judge Day, now Justice Day, we held the location of a conveyor of oil meal in a new and different place in the machinery, which effected a better result, constituted patentable invention.

We do not find anything in the occurrences in the Patent Office, as shown by the file and wrapper and contents, which can be of advantage to the appellees. True, he was required to amend his claim. The word "inverse," or "inversely," in describing the graduated scale-bar, was changed, so that the claim read "a scale-bar (inversely) graduated in total values. * * *" But the defendants use this "inversely" graduated scale-bar. It may be that such an inversely graduated scale-bar was not new. This does not affect the question as to whether the organization as claimed in combination is such an improvement over the same elements in the structures of the old art as to involve invention. Neither does the fact that the claims before such amendment were rejected conclude us with respect to the novelty of the invention, either with or without the limitations imposed. As amended, the Patent Office deemed the invention of sufficient merit to be patentable, and with that conclusion we agree. What we might think of the claims without the limitations is not here involved, as we do not rest our conclusion upon the novelty of the inverse graduations as a distinct element. The claims in issue are valid and infringed.

Reversed, for further proceedings in accordance with this opinion.