DAVEY PEGGING MACH. CO. v. ISAAC PROUTY & CO. et al.

(Circuit Court of Appeals, First Circuit. February 9, 1901.)

No. 316.

**1. PATENTS—INFRINGEMENT.**
Wherever patentability of a device turns on the application to some particular purpose of an element used generally throughout the arts, although the patent issues for the device, and not for the process, product, or result, and if, also, the invention is of a limited or low order, the patent must be restricted, so far as an alleged infringement is concerned, to the express purpose pointed out by the inventor. Electric Co. v. La Rue, 11 Sup. Ct. 670, 139 U. S. 601, 35 L. Ed. 294, U. S. v. Berdan Fire-Arms Mfg. Co., 15 Sup. Ct. 420, 156 U. S. 552, 39 L. Ed. 530, and Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, applied.

**2. SAME—VALIDITY AND INFRINGEMENT—PEGGING MACHINES.**
The Davey patent, No. 555,434, for an improvement in pegging machines, the essential feature of which is a reduction in size of the horn tip used in such machines to support the work during the pegging operation, so as to enable it to enter far enough into shoes having pointed or small toes to do effective work therein, while describing a machine which consists of a combination of well-known elements, discloses patentable invention, in that it accomplished successfully what prior inventions had failed to accomplish; but, so construed, it is not infringed by a machine which contains substantially the same elements, arranged to accomplish the cutting of the pegs, as well as driving them, and without regard to reduction in size of the horn tip.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 96 Fed. 336.

Frederick P. Fish and William K. Richardson, for appellant.
Louis W. Southgate, for appellees.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge.. This appeal grows out of the alleged infringement of claims 1, 2, 3, and 10 of the patent issued to John F. Davey on February 25, 1896, No. 555,434. These claims are as follows:

"(1) A work support for pegging machines, comprising a horn tip provided with a supporting annulus, combined with a button having a shank contained within said annulus, and a supporting portion resting on said annulus, said button being provided with external gear teeth in a portion of its surface in bearing engagement with said annulus, substantially as and for the purpose described.

"(2) The combination of the rotatable horn of a pegging machine with a work-supporting button pivotally supported in the tip thereof, and provided with an eccentric awl passage and means of preventing rotation of the button when the horn is turned, substantially as and for the purpose described.

"(3) The combination of the rotatable horn of a pegging machine with a work-supporting button pivotally supported in the tip thereof, and provided with an eccentric awl passage and a slot extending laterally therefrom through and to the other side of the axis of the button, and means for preventing rotation of the button when the horn is turned, substantially as and for the purpose described."

"(10) The combination of the horn adapted to rotate upon a vertical axis, provided at its tip with a supporting annulus concentric with its axis of rotation, with a button supported by said annulus, and provided with an eccentric awl passage within the opening of the annulus, and means for preventing rotation of the button when the horn is turned, substantially as and for the purpose described."

To understand the issues, it is necessary to examine the invention critically. It concerns only driving the peg, and makes no provision for cutting its end. The art is a subdivision of that of pegging without maintaining the last in the shoe during the operation. It cannot be doubted that it is useful. The record shows that various devices had been attempted for the same purpose unsuccessfully, all of them, however, making use of a support for the mechanism, a so-called "horn," which enters the shoe, the horn tip, and some method of adjusting the rotation of the tip with reference to the rotation of the rest of the machine, as the tip is moved from point to point. No invention is claimed by Davey to arise out of any of these elements except the tip. As will be seen by the specification, his invention relies on improvements in details, meeting from point to point defects in previous devices, so that, as the result of several improvements co-acting together, a satisfactory tip was produced.

This case relates to the tip in its simpler form, as devised for driving a single line of pegs. In order to use it for additional lines, Davey made some modifications which may be regarded as a separate thought or invention, to which we have no further occasion to refer.

The main difficulty dealt with by Davey which the specification points out was to construct horn tips capable of entering far enough into the toe of the shoe. A second difficulty was due to the projection of the ends of the driven pegs through the inner sole; and it was also stated that it is desirable to permit the awl to run below the work support, so that the length of the awl stroke need not be varied in passing from thick to thin material. In order to overcome the first difficulty named, Davey undertook to reduce

to a minimum the height and diameter of the horn tip. This case has nothing to do with the second difficulty. To meet the last, he supported that part of the horn tip which he calls the "button," which is in fact the anvil, on a ring which he calls an "annulus," and he gave the button a hollow shank, thus permitting the awl and the peg to be driven through and through, without any obstruction, in a vertical direction.

As to the reduction of the dimensions of the horn tip, the specification refers to the fact that, after the awl is driven, the material is necessarily fed forward a distance equal to that between two adjacent pegs, in order to receive a new peg. It says that, in prior machines, the work was pierced by the awl at a hole in the button co-axial with the horn tip. Thus, of course, the diameter of the tip was at least twice as large as the feed. The specification then points out that in Davey's device the hole where the awl pierces the work is eccentric to the axis of the button, "being," as it says, "set to one side of the axis a distance about equal to one-half the normal feed." It continues that the awl hole formed in the material passes across the center, and at the end of the movement is eccentric on the other side of the axis from the point at which it was made, so that the diameter, instead of the radius of the button, need be only large enough to accommodate the feed. "Thus, other things being equal, the button, having an eccentric awl passage in accordance with the present invention, may be much smaller than those heretofore made, having a concentric awl passage." It closes: "By this and other features of construction hereinafter described, the horn tip and work support, forming the subject of the present invention, are made sufficiently compact to peg properly around the toe portion of a boot or shoe."

The button is constructed with a supporting shoulder, passing longitudinally around its entire circumference, which rests on the so-called "annulus," on which it rotates. What is thus termed an "annulus" is an ordinary rim, found everywhere in the mechanical and domestic arts. The extension of the button below the shoulder constitutes what is called the "shank." This is merely a hollow cylindrical extension, such as is found in the arts wherever it is desired to support any cylindrical utensil by a rim, if there is no occasion that the bottom of the utensil be closed in. This construction, of course, permits the awl to be driven through the awl passage in the button, and through and through, without meeting any obstruction below; thus rendering it unnecessary to vary the awl stroke in passing from thick to thin material,—all of which has been referred to in the portions of the specification which we have cited. In addition thereto, the button is provided with the geared teeth of claim 1, engaging with the rotating device, common in mechanisms of this character, as we have already said.

We think the references we have made to the specification render it clear that, while it was claimed at bar in behalf of the complainant that Davey's invention covers an eccentric awl passage broadly, yet his idea could not thus have been accomplished. A merely eccentric awl passage, or a passage which has no relation to the point

where the feed stops, could be secured though the feed crossed only the radius of the button, which would have been wholly inconsistent with Davey's expressed purpose. Nothing in the case shows that to have commenced near the circumference, and to have fed only to the center, would have accomplished anything, so far as concerns Davey, which would not have been equally secured by commencing, as prior devices did, at the center and feeding to the circumference.

Moreover, the extracts which we have made from the specification expressly require that the feed shall cross the center of the button, and that the end of the feed movement shall be eccentric on the other side of that center from the point at which the awl hole was made. They do not state the precise place where the feed shall terminate, but they contain enough to demonstrate that our construction of the patent in this particular is correct. We refer especially to the statement that the awl hole is set to one side of the axis "a distance about equal to one-half the normal feed." So it follows mathematically that, in order to accomplish the entire feed, the distance between the termini must be about equal to the diameter of the button. In speaking of the "slot," which is necessarily co-terminal with the feed, the specification is exact, describing it as "a slot extending from said awl passage across the axis of the button to a point equally eccentric at the other side." Indeed, it is only on this construction that it is possible to maintain Davey's purpose, expressly given in the specification, to the effect that "the diameter, instead of the radius, of the button, as heretofore, need be only large enough to accommodate the feed of the material." The same line of reasoning defeats the proposition, made at bar, that utilization of the entire diameter of the button for any purpose or purposes whatever would be within Davey's idea. Our extracts from the specification make it clear that his proposition was to utilize the diameter of the button for a particular purpose,— that is, for the feed of the awl,—and for nothing else. On the whole, it is the reasonable, and the only fair, construction to be deduced from careful examination of the specification and claims that Davey's idea was the eccentric placing of the awl hole in such way as to secure a feed across the diameter of the button, and to thus secure a corresponding reduction of the horn tip, in order to penetrate the shoe, as already pointed out.

Without going into detail, the specification shows clearly enough that the peculiar location and construction of the gear teeth, especially referred to in claim 1, serve to reduce the horn tip perpendicularly. Therefore this element also relates to diminishing the horn tip, so that it can successfully penetrate into the extremities of boots and shoes for the general purposes to which the patent appertains. Thus, his device was adapted for use in doing fine work with a narrow toe, and it had no particular relation to the coarse boot or shoe, with a broad toe, in which a tip of unreduced size can be worked without difficulty.

The respondents' device not only drives the peg, but it automatically cuts off its end. Davey lays this aside in the following ref-

crence in his specification to the difficulty created by the ends of the driven pegs:

"Attempts have been made to overcome this latter difficulty by providing a horn tip, or work support, with devices intended to cut off or cripple the projecting ends of the pegs after they have been driven, and during the feed of the material in the pegging operation."

There is a serious question whether the various claims in issue cover the pith of Davey's invention, and whether each of them is not of such fragmentary character that it is doubtful whether it can be held to cover any patentable subject-matter. However, the patentee maintains that each claim includes the substance of the entire device; and inasmuch as this proposition is not wholly unreasonable, and may perhaps be sustained on a thorough investigation of all the matters which bear upon the construction of the various claims, and inasmuch, further, as it does not become necessary that we should determine this question, we proceed with the case as though this contention was established. We are also of opinion that Davey's device contained patentable invention, and, for reasons which we will state later, we regard it as quite analogous to those in Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, and in Consolidated Car-Heating Co. v. West End St. Ry. Co., 29 C. C. A. 386, 85 Fed. 662. A somewhat fuller statement of the reasons why the car heater involved in the latter case was held to contain patentable invention may be found in the same suit as reported in the circuit court under the title of Consolidated Car-Heating Co. v. American Electric Heating Corp. (C. C.) 82 Fed. 993. Another device of analogous character was held by us to be patentable in Gaslighting Co. v. Fuller, 8 C. C. A. 442, 59 Fed. 1003. Therefore the only question which we have to consider is that of infringement, and as to this we must be governed by the peculiar nature of the invention, which we hold to be of the class covered by the cases cited.

The respondents locate their awl passage eccentrically, but, unlike Davey, they drive the peg within the radius of the button. Again, unlike Davey, they have no purpose of accomplishing, and they do not accomplish, a reduction of size. So much of the diameter of the button as is not used for the awl feed they apply to a mechanism for cutting pegs. So far as the peg-driving feed is concerned, they differ from what preceded Davey only in moving from the circumference towards the center instead of from the center towards the circumference,—a change which clearly is ordinarily within the common right. While Davey's device is available for fine work, respondents' is so only for coarse; and while the former concerns only driving, the latter provides both for driving pegs and cutting off their ends inside of the sole. To hold that the respondents cannot use so much of the diameter as lies on the other side of the axis from the awl feed, for such purposes, would plainly obstruct invention instead of encouraging it.

In view of the facts that the respondents' device thus accomplishes a substantially different result from the complainant's, and has a substantial function which the latter does not possess, and for which

it was not intended, and that, also, the latter can do the fine work for which the former is not adapted, the remark made in the opinion of Judge Hawley, given in behalf of the circuit court of appeals for the Ninth circuit, in Norton v. Jensen, 1 C. C. A. 452, 464, 49 Fed. 859, 875, seems pertinent: "It would be a perversion of the law to hold a machine which can do certain kinds of work to be an infringement of a patent for a different machine, which cannot do the same work." It is true, ordinarily, that the mere fact that a machine effects better results than the patented device, or that a patented device is applied to purposes not foreseen by the patentee, does not relieve against the charge of infringement; but in U. S. v. Berdan Firearms Mfg. Co., 156 U. S. 552, 565, 15 Sup. Ct. 420, 424, 39 L. Ed. 530, 534, it appeared that the patent there in issue was for a combination no single element of which was new; that the device was intended for use with rim-fire cartridges, but was not successful when used with center-fire cartridges; that the United States, who were alleged to have infringed, used only the latter cartridges; and that, in order to adapt the patented device to these cartridges, a new element was added, which was not covered by any patent. The court held that there was no infringement, and observed:

"For where several elements, no one of which is novel, are united in a combination which is the subject of a patent, and these several elements are thereafter united with another element into a new combination, and this new combination performs a work which the patented combination could not, there is no infringement."

There is, moreover, a class of cases to which we cannot broadly apply the rule that results which may be gained by a device are protected although not foreseen by the patentee; in other words, cases in which the rule of "double use," as it is often called, does not apply in behalf of the inventor. Those which we have cited and that at bar are of this class. They all turn on the fact that, under peculiar circumstances, the application to some particular purpose of an element used generally throughout the arts, or an improvement in various details as in the present case, amounts to invention, on account of the particular end accomplished, although the patent issues for the device, and not for the process, product, or result. Ordinarily, such inventions are of a limited or low order, and must be restricted to the express purposes pointed out by the inventor, or they obstruct the advance of the beneficial arts, rather than assist it. The adaptation of a torsional spring was discussed in Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294. The torsional spring had been used largely in the arts, yet its particular adaptation to a telegraph key was protected. The court said, at page 606, 139 U. S., page 672, 11 Sup. Ct., and page 296, 35 L. Ed., that a like use, "for purposes which differ principally in name," would infringe, but it is impossible to hold otherwise than that the patent was limited to the result which the patentee expressly pointed out. So, in Watson v. Stevens, already referred to, the use of rotating dies in lieu of reciprocating dies, one being strictly the equivalent of the other, was protected in the art of

making shank stiffeners. That was the use which the patentee had pointed out in his patent, and, under the peculiar circumstances of the case, although the mere change of rotating dies for reciprocating dies would not be protected, it was held that the patentee's device covered invention. It would have been impossible, however, to have broadened out the patent to cover the use of rotating dies for cutting out any other blanks than shank stiffeners. So, in Consolidated Car-Heating Co. v. West End St. Ry. Co., Judge Aldrich, speaking in behalf of the court, at page 389, 29 C. C. A., and page 664, 85 Fed., dwells constantly on the use to which the detailed improvements combined in the patentee's device were applied,—that is, to heating street-railway cars,—and he said: "Looking at the general use, the substantial results accomplished through the mechanical arrangement of the device described," etc. In view of what was said in that case, it would be impossible to hold that the combination patented there covered a patentable invention, except in connection with the specific use to which the patentee in his specification applied it. So, in Electric Gaslighting Co. v. Fuller, the opinion of the court closed, at page 444, 8 C. C. A., and page 1005, 59 Fed., as follows:

"Looking at Tirrell's improvement in issue here from this point of view, it consists of mechanical details, accomplishing a useful result, but of a low order; and the mechanical details of respondents' devices are different, in the sense of the patent law, and accomplish a result also in a large part different, and cannot be held to infringe."

While the particular letter of this paragraph may not apply accurately to any case except that then under consideration, yet it states the underlying principle which forbids us from shutting out, in the interest of Davey's patent, a device like that of the respondents which combines elements Davey did not combine, and accomplishes results he did not seek to accomplish, and which cannot accomplish those to which his patent particularly relates. Therefore it follows that, while the complainant has a title to old elements as combined in his particular device to accomplish certain special results, the respondents have an equal right to avail themselves of all the same elements in their particular device to accomplish other special results, so long as it is apparent, as is the fact in the case at bar, that what they did could not justly be held to be an intended piracy under the color of apparent differences. The court below properly dismissed the bill. The decree of the court below is affirmed, and the costs of appeal are awarded to the appellees.