### WELD MFG. CO. v. JOHNSON SERVICE CO.

(Circuit Court of Appeals, First Circuit. August 15, 1906.)

No. 643.

PATENTS—INFRINGEMENT—HEAT REGULATOR.

The Johnson patent No. 542,733 for a heat-regulating apparatus using compressed air motors, controlled by a thermostat, to actuate a valve controlling the heat supply, was not anticipated by the Chadbourn patent No. 502,090 for a ventilating apparatus, but is for a primary invention in its specific field and the patentee is entitled to a construction of its claims broad enough to protect him from infringement by a use of the general system with specific devices somewhat different in details. Also *held* infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

James C. Chapin (Edwin H. Brown, on the brief), for appellant.

William K. Richardson and Wm. W. Dodge (Brandeis, Dunbar & Nutter, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This suit is for infringement of claims 1 and 3 of letters patent No. 542,733, granted to Warren S. Johnson July 16, 1895, for an improvement in heat regulating apparatus:

"Claim 1. In a valve or damper-controlling apparatus, the combination of a primary, a secondary, and a tertiary valve; fluid-pressure motors for actuating the primary and secondary valves; and a thermostatic motor for actuating the tertiary valve; the primary valve serving to regulate the heat supply, the secondary valve serving to control the delivery and release of fluid pressure to and from the primary valve motor; and the tertiary valve serving to open and close an outlet of the fluid-pressure motor of the secondary valve and thereby to control the fluid pressure of the secondary valve motor."

"Claim 3. In combination with a main heat-controlling valve or damper, a fluid-pressure motor for actuating said valve or damper, a second valve controlling said fluid-pressure motor, a second fluid-pressure motor controlling said second valve, and a thermostat controlling the relative supply and waste of fluid in the second fluid-pressure motor."

The defendant relies chiefly upon the patent of Chadbourn, No. 502,090, dated July 25, 1893, for a ventilating apparatus.

It is quite clear that the combinations claimed by Chadbourn are different in terms from those of Johnson. Each claim of the Chadbourn patent specifies as an element a ventilator, and neither in the specification nor claims is there a suggestion of applying the combination, or any of its elements, to the purpose of shutting off and opening a heat-controlling valve or damper. In a very broad sense, we may speak of both a ventilator, which lets out hot air from a room or lets in cold air, and the valve of a steam pipe or a register, as heat regulating apparatus. There is, nevertheless, a very practical difference between the effects upon temperature caused by opening a window and the effects caused by shutting off steam or hot air.

The practical art which Johnson was engaged in perfecting had for its object the maintenance of a uniform temperature by an automatic and quickly-acting control of the heat supply through the action of a thermostat. Closeness of regulation was his object. He states that:

"Commonly the variation permitted either way from the normal or prescribed temperature is 2° Fahrenheit, and only very carefully constructed electrical apparatus will regulate within these limits."

Also:

"The present system, however, is so exceedingly delicate, owing to the fact that fluid pressure is employed in the secondary motor, and to the further fact that the thermostat has only to close or open a very minute orifice without the intervention of any links, joints, or moving parts whatever, that a good mercurial thermometer is incapable of showing any deviation from the predetermined degree, although the apparatus may operate many times."

Chadbourn shows no conception of a device operating by minute changes of temperature. He intends to open a ventilator when the heat becomes excessive, and to shut it when the temperature drops. There is no indication that the device was intended or adapted to operate on very minute variations, and thus prevent the heat from becoming excessive. Chadbourn seems to have relied upon considerable variations from a normal temperature, while Johnson intends to prevent considerable variations of temperature by a delicate apparatus sensitive to slight variations.

There is an important practical difference between apparatus designed to control the rise and fall of temperature by minutely regulating the supply of heat to a room, and thus storing or economizing the heat, and an apparatus which reduces temperature without reducing the consumption of heat. By the first, the heat may be stored or distributed elsewhere; by the second it is lost.

Nor do we think that the Chadbourn patent contains such suggestions as to make it a publication which limits the substantial novelty of Johnson's combination. If the problem were merely of valve actuation by a thermostat, then it might be said that a ventilator, a transom, a register, and the valve of a steam pipe were substantially the same, and that it required no invention to substitute a valve regulating

the heat supply for Chadbourn's ventilator. But regulation of temperature by a thermostat is something more than valve actuation.

The inventor seeks to obtain the advantages of cutting off and putting on the heat supply through means suitable for use in dwellings, living rooms, etc., as well as in buildings like greenhouses. As a practical matter, Johnson employs compressed air to operate both his primary and secondary motor. Chadbourn's idea was to use water, which, according to the evidence, would be impractical for heat regulation.

While Cladbourn says that "air or any other suitable fluid may be employed," his apparatus is devised for water, and is not designed to secure, or to profit by, the advantages which compressed air has over water. Chadbourn apparently sees no practical difference between the two, and mentions air merely as an equivalent for water. He makes no suggestion that air pressure is superior to electricity, or that it will regulate closer. He simply throws off this suggestion, use air for water, as a stroke of the pen, rather than as an expression of any perception of the advantages following the use of air. Chadbourn attempts to operate a water valve, a plug valve, by the action of a thermostat.

The use of air permits the use of a form of valve different from that suggested by Chadbourn. Johnson was fully alive to the fact that the mechanical work to be done by his thermostat would be comparatively slight in controlling an air motor. There is no reason to think that Chadbourn ever saw the advantages of the use of air, or the beneficial modifications that might be made in a motor using air, or the lessened requirements upon the thermostat when air was used.

There can be no question that, from the use of a compressed air relay, important advantages result in a system of heat regulation governed by a thermostat; and there can be no doubt that Johnson did see these advantages, and incorporated them in his combination. He is indebted to Chadbourn for nothing in this respect.

The Chadbourn patent, however, does show the use, for ventilating purposes, of a secondary relay using fluid pressure. It suggests that air be used as an equivalent for water in apparatus designed for water. To start from Chadbourn's ventilating device and to arrive at Johnson's heat-regulating device, it would not be enough to transfer the Chadbourn ventilator motor to a heat-supply valve, and to appreciate the advantages of controlling the heat supply rather than a heat exit; but it also would be necessary to select as the "fluid pressure" compressed air specifically, with a foresight of its practicability and advantages over water, and with an appreciation of the fact that valves could be used of an entirely different character from those suggested by Chadbourn for use with water, thus relieving the thermostat from the work of turning a plug valve. Chadbourn's passing suggestion that air might be used instead of water contains no suggestion of giving less or another kind of work to the thermostat, or of using a valve which does not require to be turned mechanically.

While it is true that Chadbourn and Johnson both use the term "fluid pressure," and thus create a verbal similarity in their descriptions, it is obvious that, looking at the things signified, Chadbourn

meant water, or, as its equivalent, air operating in the same way on a plug valve; and that Johnson meant by fluid pressure compressed air, or any kind of fluid pressure which would be substantially the same as compressed air for use with valves of the general kind that he described, and with a thermostat simply operating to open and close an opening or port.

The defendant contends that, inasmuch as Chadbourn discloses the generic combination, the only novelty of Johnson lies in the form of his secondary motor, or in the form of his secondary valve. This, in our opinion, is erroneous. Chadbourn does not disclose or claim a combination which regulates the heat supply, nor does he disclose practical mechanism which, merely by transfer to the heat-supply valve, would give the Johnson combination. It is true he makes the suggestion of the use for valve actuation of a secondary motor controlled by a thermostat, but this is far from showing or suggesting the advantages to be derived in a heat-regulating apparatus from a secondary motor which, because it uses compressed air, could be of different construction from a motor using water or air as equivalents, and is far from showing that by using compressed air the thermostat could merely open or close a port and need not turn a plug valve. Johnson saw that by using compressed air he could dispense with plug valve turning. While it may be true that he uses a thermostat and an air motor like Easton's, yet his entire combination is not anticipated by Easton or by Chadbourn.

In view of these considerations we think it cannot be said that Johnson merely applied Chadbourn's valve actuator to a heat-supply valve. He was first to regulate the heat supply, using a relay or secondary motor operated by compressed air, and this seems to have been a very practical and important contribution to the art of heat regulation. We are of the opinion, therefore, that Johnson, and not Chadbourn, is to be regarded as the inventor of the generic combination, and that the claims are to be construed not merely as for minor and detailed improvements, but as for a primary invention in the specific field of heat regulation. It should be kept in mind, in considering Chadbourn's place in the art, that Johnson, before Chadbourn's date, had devised a practical system and apparatus for heat regulation in which the thermostat had actuated an electric relay which turned on and off the compressed air that actuated the main heat-controlling valve. The generic combination in which a relay was used had been already described by Johnson. In the present patent in suit Johnson says:

"My present invention secures the advantages of apparatus employing electricity without the use of electricity, and has also advantages peculiar to itself arising from the action of the thermostat alone directly upon the fluid pressure."

Chadbourn's apparatus, constructed to operate either by water or air, which disregards differences between air and water, conveys no information of a kind of relay or apparatus superior to that formerly employed by Johnson. To see that a compressed-air relay might be a superior substitute for a practically operative electric relay in the prac-

tical art of heat regulation required a broader vision than that of Chadbourn's when he suggested that air might be used as a substitute for water in a device designed to be operated by water, through thermostatic action which turned a plug valve.

In order to hold that Chadbourn's patent in any respect anticipates or limits the patent in suit, we should be obliged to lay great stress on a mere verbal suggestion of Chadbourn as to the use of air, and to ignore the fact that he had apparently no conception whatever of the modifications which the use of a compressed-air relay would permit in practical apparatus for heat regulation. We also should be obliged to ignore entirely Johnson's exact and definite conception which led to an important improvement upon an art which Johnson had already brought to a high degree of development.

We are of the opinion that, in sustaining the Johnson patent, and in giving it a construction commensurate with Johnson's actual contribution to the practical art, we are well within the principles laid down and applied in Lawther v. Hamilton, 124 U. S. 1, 6, 8 Sup. Ct. 342, 31 L. Ed. 325; Western Electric Co. v. La Rue, 139 U. S. 601, 606, 11 Sup. Ct. 670, 35 L. Ed. 294; Potts v. Creagor, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Cash Register Case, 156 U. S. 502, 515, 15 Sup. Ct. 434, 39 L. Ed. 511; Hobbs v. Beach, 180 U. S. 383, 392, 21 Sup. Ct. 409, 45 L. Ed. 586; and applied by us in Watson v. Stevens, 51 Fed. 757, 759, 2 C. C. A. 500; Davey Company v. Prouty Company, 107 Fed. 505, 509, 46 C. C. A. 439; and Forsyth v. Garlock (C. C. A.) 142 Fed. 461, 462.

Upon this view of the scope of the Johnson patent we have no doubt upon the question of infringement. The defendant's device, while not a mere copy of Johnson's apparatus, contains the generic combination claimed by Johnson, and of which, in our opinion, he was the primary inventor. The precise mechanical character of the operating connection between the secondary valve and the secondary motor, whether by toggle joint or by an ordinary lever of the first class, is a matter not made material by the claims. Neither do we think that we are required to read into the claims any special form of mechanical connection, as an additional element, or as a limitation.

Fig. 1 illustrates, and the specification describes, in a broad way, a system, without any limitation whatever as to details. The combination resulting in a general system of heat regulation was the pith of the invention, and the precise details of such a system is a subordinate matter affecting neither the claims nor the substance of the case. Johnson showed the details by which such a system could be made practical, and was entitled to claims broad enough to protect him from infringement by a use of the general system with specific devices somewhat different in details.

We are also of the opinion that the defendant does not escape infringement because its device controls both the outlet and inlet of the secondary motor, instead of the outlet alone. Assuming that this variation is an improvement upon Johnson, it is still true that it embodies the substance of Johnson's definite conception that a secondary

motor using compressed air was, in the art of heat regulation, a substantial improvement over the electrical and other devices of the prior art.

As we disagree with the view that Chadbourn, by his merely offhand suggestion to use air as an alternative for water in a secondary motor, became the first inventor of the generic combination, and as we are of the opinion that Johnson was first to see and to apply to heat regulation the specific advantages that result from the use of the compressed-air relay or secondary motor, the question of infringement must be determined by the inquiry: Does the defendant use the substantial and characteristic feature of Johnson's combination to secure for itself the substance of the practical improvement that Johnson introduced into the art? We are of the opinion that the defendant does this, and that, construing this patent as for a primary combination, the control of the fluid pressure—to wit, compressed air—at both the outlet and inlet, must be regarded as substantially the same as controlling it merely by the outlet. The main point was that it should be controlled through the action of the thermostat in opening and closing a port. Whether at the outlet or inlet, or at both outlet and inlet, is a secondary matter.

We entirely agree with the learned Circuit Judge that the defendant insists too much upon minute literalness in its interpretation of the words "a thermostat controlling the relative supply and waste." We think that, while this language describes the control of a waste and a supply occurring at the same time, it also describes the control of supply and waste respectively, whether they occur simultaneously or successively. We are of the opinion that Claims 1 and 3 are both valid, and are both infringed.

The decree of the Circuit Court is affirmed, and the appellee recovers the costs of appeal.