BLAKE & KNOWLES STEAM PUMP WORKS v. WARREN STEAM
PUMP CO.

(Circuit Court, D. Massachusetts. August 2, 1907.)

No. 167.

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.
   Where a patented structure, although a combination of old elements, is new, and capable of a use which is new and of special utility, and in such use constitutes an important advance in the art, it cannot be denied

patentability because other uses are also claimed for it, in which it is not a substantial advance on the prior art.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 49.]

**2. SAME—INFRINGEMENT—PUMPING ENGINE.**

The Whiting & Wheeler patent, No. 526,913, for a pumping engine intended for use as an air pump for withdrawing the water and air from the condenser of a steam engine, was not anticipated and discloses patentable novelty and invention. The Hall & Gage patent, No. 522,938, for a combination which includes a special valve movement for use in connection with such pump, also *held* valid, and both patents *held* infringed.

In Equity.

Philipp, Sawyer, Rice & Kennedy, for complainant.
George L. Roberts & Bro., for defendant.

BROWN, District Judge. The bill charges infringement of two letters patent; the earlier in date of application being No. 526,913, granted October 2, 1894, for the invention of Whiting & Wheeler, and No. 522,938, granted July 10, 1894, for the invention of Hall & Gage. Both patents relate to pumping engines. It clearly appears from the specification of each patent that the devices claimed were intended for use as "air pumps" for withdrawing the water and air from the steam engine condenser, to maintain a partial vacuum in the condenser and exhaust piping of the engine. The efficiency of the complainant's pump for this purpose is well proved, and is not denied. The defense is based largely upon the fact that the pumps were also intended for use as water pumps, or as combined air and water pumps. I agree with the complainant's criticism of the defense, that it is based on a false position and incorrect interpretation of the patents in suit.

The defendant is obliged to concede that the exact combinations claimed in these patents are not anticipated in the prior art. Furthermore, it has not been able to deny complainant's proof that the pump embodying these features produces a novel and useful result, namely, the production of a higher vacuum than was produced by any of the prior combinations or devices.

The efficiency of complainant's pumps is shown by most convincing testimony, and by their adoption as air pumps on the United States vessels Minneapolis, Columbia, Indiana, Massachusetts, New York, and Brooklyn, and on the steamships Kaiser Wilhelm der Grosse, Hamburg, Princess Irene, Koenig Albert, Deutschland, New York, Philadelphia, etc., and in many electric lighting and traction plants.

The defense is most elaborate, but is so thoroughly permeated by a fallacious interpretation of the patents that the case may be most conveniently considered by disposing of this fundamental question at the outset. The defendant's brief states:

"The structure to which the subject-matter of these claims purports to appertain constitutes a vertical twin steam pump wherein buckets are contained in the pump cylinders, but are to subserve any of the uses of which they are capable.

"This * * * is manifest from the language of the specification of the Whiting & Wheeler patent, which explicitly declares (page 1, lines 22–32; page 2, lines 17–28) that the two bucket pumps of the structure therein described and shown may be used either both for pumping air (meaning the mingled air and water coming from the steam condenser), or both for pumping water,

or one for pumping water and the other for pumping air; so that the sub-ject-matter of neither of the claims of this patent, at least, can be character-ized by any function which is not common to all these three modes of use."

A consideration of the logical and legal validity of this contention may obviate the necessity for considering in detail much of the defendant's argument. The defendant's brief concedes that what is claimed is a structure. It is also conceded that the same group of features has not been contained in previous devices. The exact structure is new, and, when used as an air pump, is so great an improvement on the air pumps of the prior art that it has largely displaced them and has gone into extensive use. The defendant, nevertheless, argues that the device of each patent is not novel in the sense of the patent law, nor in a substantial sense, because, considered as a water pump, or as pumping water in one pump cylinder and air in another pump cylinder, it is in substance anticipated by combinations using, instead of buckets, plungers or pistons. It is thoroughly proved that, for air pump use, buckets have great advantages, which cannot be secured by pistons or plungers, and that these are not equivalents for buckets in air pump use, though they may be for other purposes.

The defendant makes the remarkable contention that the evidence of the utilities of the patented structure as an air pump is wholly immaterial, because these utilities do not also appertain to it as a water pump, or as a combined air pump and water-circulating pump. This is to say that if the structure is new, and capable of three uses, one of which is of special utility and constitutes an important advance in the art, and two of which are of no substantial advance on the prior art, the invention is to be judged by leaving out the inventor's novel contribution to the art, merely because he says that his new machine will also do what old machines have done as well. This proposition is reiterated by the defendant in various forms:

"All the evidence, therefore, which the complainant has adduced to show the alleged merits and utilities of the twin air pumps manufactured by it under the patents in suit, is wholly immaterial and wide of the mark. It is not equivalent to showing what merits or utilities, if any, the structures described, shown and claimed in the patents sued upon, have by virtue of what is common to all their modes of use in comparison with other prior pumping engines. Neither the question of their utility nor the question of their novelty can be settled by consideration only of one of their modes of use. The inquiry in each case is concerned solely with what is characteristic of the structure when put to all the uses of which it is capable."

It is a distinctive characteristic of the patented structure that, when used to pump air, it will create a high vacuum, and, in my opinion, there is no practical reason, and no reason in law or logic, which will permit a court to disregard this fact or to deprive an inventor of the benefit of this fact through any language used in the specification. The defendant offers no authority and no argument to support such a rule of construction, but throughout its brief assumes that the correctness of its position is self-evident. To all of the prior devices presented to show noninvention, the complainant replies that they are not capable of the results which the device of the patents in suit attains, and the sole reply to this is that it is immaterial. The defendant treats the claims of the Whiting & Wheeler

patent as if they were for an abstraction of that which is common to all the uses of the claimed structure, instead of for a claimed structure which is capable of three uses, one of which is proved to be of special value. It is a remarkable argument to say that, although Whiting & Wheeler show a structure and claim a structure which unquestionably is designed and intended to be operated as an air pump, they are not entitled to show the advantages from such operation, because they do not exist when the structure is used for a water pump, or do not wholly exist when one of the buckets is used for a circulating pump. The proposition that no novelty is to be attributed to Whiting & Wheeler which is not contained in all the uses of their device is clearly contrary to the decisions in this circuit. Forsyth v. Garlock, 142 Fed. 461, 73 C. C. A. 577; Watson v. Stevens, 51 Fed. 757, 2 C. C. A. 200; Davey Pegging Machine Co. v. Isaac Prouty & Co., 107 Fed. 505, 509, 46 C. C. A. 439; Consolidated Car Heating Co. v. American Electric Heating Corporation (C. C.) 82 Fed. 993, affirmed on appeal 85 Fed. 662, 29 C. C. A. 386.

A second question arises as to the construction of the Whiting & Wheeler patent. The general structure claimed in this patent may be understood from the following claims:

"1. The combination with the two vertical pump cylinders and their lifting buckets and valves, of direct acting steam cylinders and pistons with their piston rods in line and connected to the rods of the buckets, a frame and columns connecting with the pump cylinders and on which frame the steam cylinders are directly connected, a walking-beam between the pump and the engine and a pivot for the same upon a bearing extending down from the frame, and link connections at the respective ends of the walking-beam to the cross-heads of the piston rods for unifying the action of the engine directly upon the lifting buckets, substantially as set forth.

"2. In a direct acting pumping engine, the combination with a pair of pump cylinders having lifting buckets and valves and valves in the lower part of the pump cylinders, of steam cylinders and piston rods connecting the buckets of the pump and the pistons of the engine, a walking-beam between the pump cylinders and the steam cylinders, links connecting the ends of the walking-beam with the piston rods, and a frame extending up from the pumps and to which the steam cylinders are directly connected and which frame also supports the pivots of the walking-beam, substantially as set forth.

"3. The combination in a pumping engine of two vertical pumping cylinders, buckets and rods for the same, a frame upon the pump cylinders, and steam cylinders directly connected to and supported by the frame, the piston rods of the engine being in line with and directly connected to the rods of the pumps, a walking-beam between the pump and the engine and links connecting the walking-beam and the cross-heads of the piston rods, the parts being arranged so that the links are in the same plane or nearly so as the piston rods at the termination of the respective strokes, substantially as set forth."

The complainant says that this patent is on the general combination of the pump proper with the direct acting steam engine by which it is actuated, and the structure of the whole pump, and that the Hall & Gage patent is on the combination of the Whiting & Wheeler air pump with a special steam valve movement, by which important results are secured in certainty and efficiency of action. The general character of the Hall & Gage patent may be gathered from claims 1 and 2:

"1. The combination of two pump cylinders, two steam cylinders arranged in line respectively with said pump cylinders, buckets in said pump cylinders, pistons in said steam cylinders, and piston-rods connecting said pistons and

buckets, valves for said steam cylinders to control the admission of steam thereto and the movements of the pistons therein, a valve-driving engine connected with and to positively move said valves, a valve mechanism for said valve-driving engine, a rocking beam pivoted at its middle and connected at its ends with and to be rocked by said piston-rods, and a connection between said beam and valve mechanism whereby the movements of the valve-driving engine are positively controlled by the vibration of the beam and the movements of the main steam valves for the steam cylinders by the valve-driving engine, substantially as described.

"2. The combination of two pump cylinders, an entablature supported above the same and sustaining thereupon two steam cylinders in line respectively with said pump cylinders and having their pistons connected with buckets in said pump cylinders by common piston-rods, a bracket on the under side of said entablature, a beam, D, comprising two members pivoted in said bracket and having its opposite ends connected with and at opposite sides of the said piston-rods, a valve-driving engine having its valve mechanism connected with and operated by said beam, and valves to control the admission of steam to the steam cylinders respectively actuated by said valve-driving engine, substantially as described."

The term "direct acting engine" is proved to have been long used in the engineering art to exclude engines with a crank and fly wheel and other rotative parts, and the Whiting & Wheeler specification states:

"The devices for actuating the steam valves may be of any desired character, so long as they are positive in action; i. e., without 'dead center,' " etc.

While there is evidence from the defendant tending to show that this usage of the term "direct acting" is not uniform, it is not necessary to determine which usage is the more general or better   It is enough if the patentees have used terms which are warranted by good usage to limit the character of the engine named in the claims. The complainant's expert testimony is sufficient to show that, upon a fair construction of the claims and specifications, the patentees intended to use an engine which works without the use of crank and fly wheel or other device for producing rotary motion. Pumping engines controlled in operation by crank and fly wheel are therefore not relevant to limit the claims, and it is well proved that they are not adapted to secure the advantages of the complainant's device.

The pumps constructed according to the patents in suit are controlled in speed and length of stroke solely by the pressures in the steam and pump cylinders, instead of by a crank and fly wheel, and it is abundantly proved that from this difference follow practical results of importance.

Another feature of the device of the Whiting & Wheeler patent in suit is that in one mode of use pointed out in the patent it is not only entirely independent and free from control by crank and fly wheel, but is free from control by a circulating pump, presenting for the first time in the art, so far as appears from the evidence in this case, an absolutely independent air pump. While the patentees have said in the Whiting & Wheeler patent that:

"The circulating water that passes through the condenser can also be advantageously pumped by the same independent engine that operates the air pump."

155 F.—19

And also:

"The object of our invention is to apply a direct acting engine to the air pump or combined air and circulating pump in such a manner that the whole will occupy very little space and at the same time to furnish facility for access to the valves and other parts of the pumping engine"—

and while the patentees considered that their invention was present when the pump was a combined air and circulating pump, yet they clearly show and clearly direct the use of the patented structure in such manner that it is entirely free from any control by the circulating pump.

The advantages which are proven to result from the use of the structure as an air pump, free from the impediment of control by the main engine, of crank and fly wheel, or of the circulating pump, are:

"First. The movement of the buckets is controlled by the pressure in the air pump cylinders, so that, the pressure being small at the beginning of the stroke, on account of the air in the cylinders, a jump of each bucket during the first part of the stroke takes place, this jump being very quick and extending through a large portion of the stroke, until the bucket strikes the water on the down stroke or the water strikes the head valves, if these be used, on the up stroke, when the bucket slows down and moves very slowly during the rest of the stroke. This jump is of great importance in securing a high vacuum, by acting to open the valves in the bucket quickly and thus getting the air out of the condenser quickly.

"Second. The air pump automatically adjusts itself to the varying conditions of the condenser, the speed varying with the amount of air and water coming from the condenser, and the pump slowing up in case of gulps of water coming over, so as to avoid shock and strain. This automatic adjustment aids greatly in maintaining a high vacuum and preventing damage to the pump.

"Third. The speed of the pump, apart from this automatic adjustment, may be readily regulated to the speed which is found best suited to the running conditions of the condenser and engine with which the pump is used. The speed is not dependent upon crank and fly wheel operation, nor upon the speed of a circulating pump, as in the Aries and Coryell pumps."

These statements, which I quote from the complainant's brief, are fully proved, and there is no substantial denial of these advantages. The Coryell pump of the prior art resembles the complainant's device in the use of twin bucket pumps. This device was a combined air and circulating or water pump, and was constructed in accordance with patent No. 306,467, October 14, 1884. In this patent there is indicated no perception of the advantages resulting from freeing the action of the pump from the control of the water circulating pumps. It is said by the defendant:

"The Coryell patent, on the contrary, makes a merit of such an arrangement; for it states that the water cylinder of the pumping engine renders the movements of the steam engine and air pump very uniform."

It is quite true that the Whiting & Wheeler patent in suit does not specifically point out the advantages which will follow from operating the pump as an air pump, nor does it state the specific mode of operation of the parts. It makes no express reference to the fact that its operation will be different when it is used solely as an air pump from its operation when it is used as a water pump or as an air and water pump. It makes no express reference to the fact that its

rate of speed may be such as is suitable for pumping air only, and need not be such rate of speed as is required for a circulating pump. The defendant insists that the complainant is attempting to support a claim for invention upon an obscure mode of operation, which merely lurked in a particular use of the thing claimed, but which did not belong to all its uses, and was not even indicated or suggested as appertaining to it, and that this is not countenanced in the administration of the patent law.

Nothing is clearer, however, than that these patentees have specifically suggested the entirely independent use of the structure of the patents in suit as an air pump. The complainant has proved that in such use it is an air pump which is superior to those of the prior art. The descriptions by the experts of the novel operations whereby this important result is reached are not expert attempts to read into the patent what it does not contain, but are merely explanations of a mode of operation whereby the machine described differs in operation from the devices of the prior art and whereby superior results are attained. The complainant's brief states:

"The invention in issue involves a novel idea, which is the operation of the direct-acting bucket air pump without control by a crank and fly wheel or a circulating pump. The idea is new, and the fact that the means for carrying out the ideas were all old does not negative patentability, in view of the new use to which they were adapted, new functions, and the great utility of the combination. It is not conceivable that the combinations by which this important advance in the art was made were obvious."

I am of the opinion that the record in this case fully warrants the above statement of complainant's counsel. The evidence of the long-continued attempts to produce a satisfactory air pump, and that it was previously considered necessary or advantageous to control the pump either by attachment to the main engine, or by a crank and fly wheel, or by circulating pumps, and the practical results following from securing a really independent pump controlled only by the pressures in the steam and pump cylinders, in my opinion, is sufficient to establish invention in the Whiting & Wheeler patent against all the devices produced by the defendant to show that all Whiting & Wheeler did was to make a permutation of devices of the prior art. The ultimate position of the defendant is that there are two aspects of the want of substantial novelty in the structure of the patents in suit: (1) That by substitution in a particular structure, like the Chiswick pumping engine, of homologous features taken from other twin steam pumps, the complainant's structure might have been produced as a mere matter of modification of structural details; or (2) that the Aries direct acting single steam pump, or the wrecking bucket water pump duplicated and twinned together by the same means exemplified in other twin steam pumps, would have produced the pump of the patent in suit without the use of the inventive faculties. It is finally said:

"The issue of patentable novelty in the case at bar is resolved into the question whether, given a considerable number of instances of prior vertical steam pumps all fundamentally alike and containing certain subordinate structural features, there was any invention in transferring either or any of these features to a vertical twin steam pump of the same kind, to perform therein exactly the same functions as before."

This statement erroneously assumes that the functions of the features combined in the Whiting & Wheeler patent in suit are exactly the same as before. It is well proved that the pumps which are the ultimate factor in exhausting the condenser are made to operate in a different way from the pumps of prior devices, and that this operation is more efficient in securing a vacuum, and that this superior efficiency is due to a new combination of old elements.

In Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 616, 27 Sup. Ct. 307, 310, 51 L. Ed. 645, it was said:

"It is well settled by numerous decisions of this court that, while a combination of old elements producing a new and useful result will be patentable, yet where the combination is merely the assembling of old elements producing no new and useful result, invention is not shown."

The principal basis for the contention that the complainant's devices have produced no new and useful result is the erroneous argument that the patent cannot be so construed as to give the complainant the advantage of new and useful results in air pump use. As I am of the opinion that the complainant is entitled to a construction of the patents which secures to it the structures claimed for all the uses of which they are capable, the present case falls into that class of cases where a combination of old elements producing a new and useful result is regarded as patentable.

The contention that the Whiting & Wheeler patent is invalid by reason of prior personal knowledge of the individual patentees is based upon a drawing of a proposed combination of air, circulating, and feed pumps; but there is shown in this device no conception of a completely independent air pump, or of the novel ideas which are characteristic of the Whiting & Wheeler structure, when employed as the patent directs for air pump use. The same argument as to equivalency or approximate equivalency of prior structures and the same peculiar interpretation of the Whiting & Wheeler patent underlies the contention that the patent is invalid by reason of prior personal knowledge as underlies the main proposition that there is no substantial novelty in the Whiting & Wheeler patent.

As to the Hall & Gage patent, the defendant contends that the structure is the same as that described and shown in the Whiting & Wheeler patent, with the sole exception of the addition of a connection between the walking-beam and the valve-driving engine.

The complainant insists that it cannot be properly said of the claims of the Hall & Gage patent that they are merely for combinations of old elements, since the valve movement, which is one element, is itself novel, apart from its combination with the direct acting bucket air pump, and also because with this novel element combined with the direct acting bucket air pump there is produced a structure in which the elements coact to secure a single result; that is, absolute certainty and reliability of operating the separate steam valves of the two cylinders instantaneously and at exactly the same moment, and under positive control as to time of operation by the pumps through the beam regardless of the variation of speed or jump of the buckets.

In both patents the framework is of such character as to permit of a compact and self-contained construction, so that the jar and

shock from the peculiar action of the buckets is taken up by the frame and not transmitted to cause strain upon the steam pipes or upon the operating parts. I am of the opinion that both patents are for true combinations, and that the contention that they are merely for pseudo combinations involves a disregard of the fact that all of the features named in the claims contribute to a unitary result.

The criticism that the claims specify "merely an assemblage of structural features, among which some are functionally independent of the others and have no mutual influence or effect upon one another," does not present a proper test of the existence of a true combination. It is admitted that there is one sense in which all parts of such a structure are combined, namely, in the sense of sharing the strain derived primarily from the exertions of power by the steam engine; but it is said this is incident to all machinery whatsoever. The practice of patent solicitors, however, to claim, in the manner of the patents in suit, those elements which are useful and which co-operate in the structure, even performing merely the function of support or resistance to strain, is common; and it would be introducing an impractical refinement to reject elements whose function was not novel or merely incidental to machinery in general, and for such reason to invalidate claims which are drawn in a usual, practical, and convenient form. The argument of the defendant fails to recognize and to meet the practical proposition that the parts enumerated are suitable and proper parts, each having its greater or lesser share in the improved work performed by a novel structure.

A further consideration of the details of the very elaborate defense, in my opinion, is unnecessary. I have very carefully examined all the defendant's contentions, and I find nothing therein sufficient to overcome the presumption of validity of the patents in suit. If, indeed, it is true that the devices of the prior art are in substance the same as the devices of the complainant, the defendant will be still at liberty to use them. The very strong preponderance of practical testimony is to the effect that they are not the same, and that the complainant's devices owe their value to those variations from the prior art which the defendant disparages as trivial.

I am of the opinion that both patents are valid and are infringed, and a decree may be entered accordingly.

Decree for complainant.