UNION SPECIAL MACHINE CO. v. METROPOLITAN SEWING MACHINE
CO. et al.

(District Court, S. D. New York. December 30, 1912.)

No. 9,172.

PATENTS (§ 328*)—INFRINGEMENT—RUFFLING SEWING MACHINE.

The Woodward patent No. 655,143 for a ruffling sewing machine, consisting generally of a combination of a sewing machine and a ruffling device with means by which the ruffling device may be thrown in and out of operation without stopping or retarding the sewing, and leaving both hands of the operator free to manipulate the work, narrowly construed as an improvement patent, as required by the prior art, *held* not infringed.

In Equity. Suit by the Union Special Machine Company against the Metropolitan Sewing Machine Company, Lucius N. Littauer, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles McC. Chapman for infringement of letters patent No. 655,-143 for a ruffling sewing machine, granted to Woodward July 31, 1900, and also the Stocker patent No. 583,391, granted May 25, 1897. On final hearing. Decree for defendants.

Joseph C. Fraley, of Philadelphia, Pa., and Charles L. Sturtevant, of Washington, D. C., for complainant.

Edward S. Beach, of New York City, for defendants.

MAYER, District Judge. The controversy has been narrowed to a consideration of claims 5, 9, and 11 of the Woodward Ruffling Sewing Machine. The defenses are invalidity, noninfringement, and joint invention.

On the evidence there is a serious question, to say the least, as to whether Woodward was the sole inventor, and the testimony and surrounding circumstances point strongly to the joint inventorship of Swift and Woodward. The length of time during which Swift kept silent is not necessarily inconsistent with his testimony now. Very often an employé does just as Swift did and speaks only after he has been discharged, or for some other reason has severed his relations with his employer. It is not necessary, however, to make a determination on this point.

Should there be other litigation, the court under the new equity rules, will presumably have the opportunity of seeing the witnesses; and I am inclined to think that the impression which may be made by Swift on oral examination will be the most important element in reaching a satisfactory conclusion as to the part he played in the claimed invention.

The alleged invention relates to an improvement in sewing machines, and has especial reference to a combined ruffling and sewing machine; the ruffling mechanism being applied to the sewing machine and so arranged as to be thrown into and out of operation without stopping or retarding the action of the stitch-forming mechanism, even when running at very high speed. The special work for which this machine was devised is for gathering or ruffling the back of a shirt across the shoulders and, in a continuous operation, properly turning the edges and securing thereto the pieces of the double yoke. One operator can thus do the work formerly done by three, and thereby a large saving in expense of manufacture is accomplished.

The claims are as follows:

"(5) The combination with a sewing machine, of a ruffling device, actuating mechanism therefor, operative connections between the two, and means under the control of the operator, co-operating with said operative connections, for throwing the latter into and out of operation, the said controlling means being relatively stationary with respect to the operative connections and so located as to be operable independent of the hands of the operator, whereby said controlling means are accessibly presented to the operator, irrespective of the speed of the mechanism controlled thereby, the ruffling device may be thrown into and out of operation without stopping or retarding the action of the sewing machine, and both hands of the operator may be left free to manipulate the work; substantially as described." ·

"(9) The combination with a sewing machine, provided with suitable stitch-forming mechanism, and having in combination therewith means for guid-

ing independent overlapping pieces of fabric to the stitch-forming mechanism, a ruffling device, actuating mechanism therefor, operative connections between the two, and means under the control of the operator, co-operative with said operative connections, but not substantially partaking of the movement thereof, said controlling means being adapted to be operated independently of the hands of the operator, whereby the ruffling mechanism may be rendered operative or inoperative without stopping or retarding the action of the sewing machine, and leaving both hands of the operator free to manipulate the work; substantially as described."

"(11) In combination with a sewing machine, a ruffling device with means for operating it, means for throwing the same into and out of operation without stopping or retarding the action of the sewing mechanism, said means under the control of the operator acting positively upon the ruffling attachment in one direction and automatically acting in the opposite direction when released by the operator; substantially as described."

The term "ruffling device" includes comprehensively any form of mechanism which is capable of fulling, gathering, or puckering a piece of fabric.

The term "stitch-forming mechanism" comprises that group of devices which, in various forms and with great difference of detail, is found in all organized sewing machines; the elements co-operating with one another to manipulate the thread and properly secure it to the fabric.

The expression "controlling means" refers to a group of parts whose elements may be varied, but whose definite function is to throw the ruffling device into and out of operation and maintain it either in its operating or inactive position.

The expression "actuating mechanism" for the ruffling device refers to those particular parts of the organization which cause the operating movements of said device, in order to make it pucker, or crowd, or ruffle the fabric, as distinguished from the group of parts of which it is thrown into and out of operation.

The expression "means for guiding independent overlapping pieces of fabric," comprises certain elements which are not directly included in the stitch-forming mechanism, but which compel the respective pieces of fabric to travel in a definite relation to one another, as they are drawn into the stitch-forming mechanism.

The expressions "acting positively in one direction" and "automatically acting in the opposite direction" denote the fact that the operator must in some way produce, by the hand or foot, a given motion, and that upon the removal of the hand or foot the machine itself will cause the return of the parts to their former position.

The expression "operative connections" refers to a group of parts which intervene between the ruffling device proper (i. e., the blade or its equivalent) and the mechanism which imparts the forward and backward movements thereto. The "controlling means" are said to "co-operate" with these connections, but without partaking of their movement.

Claim 5, which is the broadest of those now in issue, is for a combination of certain main elements, to wit, a sewing machine, a ruffling device, actuating mechanism for the ruffling device, operative connections between the ruffling device and its actuating mechanism, and

means co-operating with said operative connections for throwing them into and out of operation, with certain qualifications of the controlling means stated to be as follows, viz.: They are relatively stationary in respect of their operative connections, and they are so located as to be operable independently of the hands of the operator; the purpose of the organization being that the controlling means shall be "accessibly presented to the operator irrespective of the speed of the mechanism controlled thereby," in order that the ruffling device may be thrown into and out of operation without stopping or retarding the sewing, and also in order that both hands of the operator may be left free to manipulate the work.

This statement of the qualifications and functions of the several parts sets forth the real point claimed for this invention, viz., that the operator shall be enabled to properly manipulate the fabric with her hands, and absolutely control the ruffling action, independently not only of the sewing operation, but independently of her own handling of the fabric, which in commercial work, at the enormous speed now used, is an absolute necessity.

Whilst, theoretically, the operator could employ her hands for shifting the ruffling device at the exact moment, she needs them both to handle the fabric itself, as it is being whirled through the machine at a rate of 40 or 50 stitches per second, which, at the rate of 10 stitches to the inch, means a travel of the goods equal to 4 or 5 inches every second, so that a given piece of work, such as a yoke, is begun and completed in 3 or 4 seconds.

The pieces of work follow each other in immediate succession, so that the operator must be able, within the almost instantaneous act of sewing each one, to get hold of the operating mechanism at the proper instant, control it properly to bring the ends of the fabric out even, and let go at the instant of completion; and this operation must be repeated two or three times during the brief travel of a single piece of work through the machine.

Claim 9 includes the features just enumerated, and introduces the further element of guides, whereby independent, overlapping pieces of fabric are compelled to travel in the proper relation to the stitching mechanism.

Claim 11 covers broadly the combination of the sewing machine, the ruffling devices, and the means for throwing the latter into and out of operation without stopping or retarding the sewing, but adds the qualification that the controlling mechanism acts positively in one direction and automatically in the other, when released by the operator. This may be organized to work either way. In other words, the machine may do the puckering or gathering normally, and it may require a positive action of the operator to throw the ruffling device out of operation; or the ruffling device may be normally inactive, and the operator may be obliged to positively throw them into operation. In either case, however, the automatic mechanism will return the device to what may be considered as its normal position when the operator releases it.

Complainant's machine is commercially known as a "yoke-ruffling" machine, and defendants' machine as a "collarette" machine. They have never come into competition, and were obviously designed for different purposes and uses; the Woodward in connection with the manufacture of shirts, shirtwaists, and the like; the defendants' machine in connection with the sewing on of collarette bindings to the neck of knitted underwear, such as the so-called "athletic" undershirt.

At final hearing a practical demonstration was given, and at first glance this complicated and useful machine in action would impress the layman as a quite remarkable device; but an examination of the prior art demonstrates that the Woodward patent is not primary, and must be narrowly construed. Woodward was by no means a pioneer, and at most an improver. The question of invention is close, in view, especially, of what are called in this suit the Muther, Woodward, and Holland defense and the Laubacher defense; but that question may be left open, because unnecessary to the determination of this case.

The charge of infringement rests on the alleged equivalency of defendants' machine; but that charge is negatived by the history of the prior art, and is not sustained by even the complainant's testimony.

(1) Complainant's and defendants' machines are each capable of plain sewing in a straight line, without ruffling or fulling. In such straight-line, plain sewing, complainant's ruffling device, which is mounted on the gooseneck, and which is therefore conveniently referred to as an "overhead ruffling device," and defendants' differential feed-dog, which is mounted underneath the bedplate of defendants' machine, are both out of ruffling or fulling action.

(2) Complainant's overhead ruffling device, when thrown into operation, folds or laps a piece of material upon itself in plaits; and when it is not used for such plaiting or ruffling operation it has no function or utility whatever. On the other hand, defendants' differential feed-dog has two functions, one or the other of which is always actively performed whenever defendants' machine is operated. One of these two functions of defendants' differential feed-dog is to move in unison with a practically integral portion of the main feed-dog underneath the bedplate. In this adjustment and mode of operation, defendants' differential feed-dog moves at the same speed as the main feed-dog, and performs no fulling operation whatsoever. When this nondifferential movement of the differential feed-dog occurs, defendants' machine is similar to complainant's machine in respect to straight-line, plain sewing; and no controversy attaches to defendants' machine as a straight-line, plain sewing machine.

(3) The controversy exists between complainant's machine as a ruffling sewing machine and defendants' machine when its differential feed-dog moves at a higher rate of speed than the main feed. But:

(4) The Woodward patent machine, in relation to the overhead ruffling device, is like a number of prior sewing machines, some of which are shown in prior patents. Machines having ruffling or comparable devices located on the gooseneck, or otherwise above the bed-

plate, constitute a long-existing class of machines, which are entirely distinct in construction and mode of operation from another old class of sewing machines, in which a main feed and a differential feed-dog of one form or another are located underneath the bedplate; the differential feed-dog being mechanically arranged to reciprocate when the main feed reciprocates, but at a different speed, so as to effect a ruffling, plaiting, or fulling operation of one type or another, as desired. The Woodward patent machine may be said to be a mechanical descendant of Davis' United States patent No. 93,063, of July 27, 1869; while defendants' machine may be said to be a mechanical descendant of Israel Singer's differential feed-dog patent No. 14,475, of March 18, 1856.

Complainant's machine cannot perform the only work that defendant's machine is practically capable of doing, to wit, the fulling of knit goods up the front openings and around the necks of knit undershirts, when bindings are to be applied at such openings; and, on the other hand, defendants' machine cannot be practically used for "gathering or ruffling the back of a shirt across the shoulders and at the same time, or in a continuous operation, properly turning the edges and securing thereto the pieces of a double yoke," as stated in the Woodward patent. See test. Stover and Collins.

Finally, the testimony of complainant's expert falls far short of the proof necessary to show equivalency. Machine Co. v. Murphy, 97 U. S. 120–125, 24 L. Ed. 935; Amer. Steel & Wire Co. v. Denning Wire & Fence Co., 194 Fed. 117, 114 C. C. A. 195; William B. Scaife & Sons Co. v. Falls City Woolen Mills (D. C.) 194 Fed. 139; Davey Pegging Machine Co. v. Isaac Prouty & Co., 107 Fed. 509, 510, 46 C. C. A. 439. He testified that the specific devices in the Woodward patent were not the mechanical equivalents of the corresponding specific means in the defendants' machine, but claimed that, although the individual elements which make up the groups of mechanical devices are not identical nor, part for part, mechanical equivalents of each other, nevertheless the respective groups in the two machines conjointly operate to give the same control of the ruffling, and, regarding these groups of specific devices in the two machines, that they produce the same result. But to support his position he relied on a generic interpretation of the claims (5, 9, and 11) now left in the suit, and such an interpretation cannot be permitted in aid of complainant's contention.

A comparison, detail for detail, would show several important dissimilarities in construction, more especially in that defendants' machine does not contain a corresponding device for lifting the ruffling blade and for returning the blade, without which devices the Woodward is inoperative. See, also, X.-Q. 107, C. R. p. 103.

For the reasons outlined, the complainant cannot prevail, and I may add that I am unable to discover any testimony upon which the individual defendants can be held liable on any theory.

The bill is dismissed, with costs, and the decree may be settled on five days' notice.